VILLAGE OF CHESTER *vs.* FRANCIS LEONARD' ET AL.

Third Judicial District, Bridgeport, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Whether the voluntary amendment of a pleading adjudged insufficient on demurrer, constitutes a waiver of the right to except to the ruling on the demurrer, *quære.*

A *de jure* municipal board authorized to act for the municipality in making contracts of a certain class, may ratify and confirm a contract of that description, executed by it in behalf of the municipality when acting as a board *de facto;* and, if the contract is otherwise valid, such ratification is in legal effect an acceptance and approval by the · municipality itself, of the action of the *de facto* board.

The reference to and recognition of such contract in a bond given to the municipality for the due performance of the contractor's undertaking, estops the obligors, when sued thereon, from denying the authority of the board to represent the municipality, both as to the contract and as to what was done in execution of it.

Such estoppel is sufficiently pleaded, if it is the necessary legal conclusion from the face of the bond which is by reference made part of the complaint.

The municipal board took the bond into its possession but never formally voted to accept it. *Held* that such a vote was not essential.

Sureties are not entitled to express notice of the acceptance of their obligation, where the bond is absolute in terms and is executed contemporaneously with the contract it is given to secure, and as part of the same transaction.

Material changes in the details of a plan on which a construction contract is based, or in the mode of determining, making and applying the payments therein agreed upon, will release the sureties of the contractor from liability on their bond, unless the power to make such alterations is reserved in the contract.

If the necessity for making changes permitted by the contract is to be determined by the supervising engineer, the sureties cannot complain because they were not notified of the changes actually required.

A clause in the contract in question provided that cash payments made before the completion of the work should in no way affect or alter the conditions of the contract. *Held* that this referred to the continued liability of the contractor for the character of his work, but did not justify, as against the sureties, material variations in the mode of payment, which tended to diminish the fund to be reserved till the final acceptance of the work, for the purpose of insuring its satisfactory execution.

A surety is not bound to be on the watch for variations which may be made in the obligations of his principal; nor can his liability be enlarged by actual notice thereof, without his acquiescence or consent.

A letter of the supervising engineer recommending a payment to the con-
tractor of a lump sum, although no estimate had been made as required
by the contract, was offered by the plaintiff. *Held* that it was inad-
missible and, as against the sureties, did not justify the payment made
on the strength of it.

Section 1108.of the General Statutes permits, but does not require, a judg-
ment against part only of joint defendants. Accordingly if the plain-
tiff fails to ask for judgment against a single defendant on the ground
of his several liability, but frames his pleadings and tries his case
upon the assumption that the defendants are jointly liable, the failure
of the trial court to render a judgment against the defendants severally
liable, affords the plaintiff no just cause of complaint in this court.

[Submitted on briefs November 4th, 1896—decided January 14th, 1897.]

ACTION on a joint and several bond, brought to the Supe-
rior Court in Fairfield County where a demurrer to the com-
plaint was sustained in part, (*Shumway, J.*). The complaint
was then amended so as to obviate the grounds of demurrer,
and the cause tried on issues of fact closed to the court,
*George W. Wheeler, J.;* facts found and judgment rendered
for the defendants, and appeal by the plaintiff for alleged
errors in the rulings of the court. *No error.*

The following facts were found by the trial court: The
plaintiff is and was, prior to October 17th, 1892, a village in
and incorporated under the laws of the State of New York,
and on that day the President and Board of Trustees of the
village, having previously attempted to organize as a Board
of Water Commissioners under Chap. 181 of the Laws of 1875,
were assuming to act as such a board. None of the members,
however, took an oath of office or filed a bond until Novem-
ber 28th, 1892; and until both these things had been done
by each, there could be no legal organization of the board
under said law, nor could it create any liability of the village.
On October 17th, 1892, these persons, assuming to act as
such a board, executed, as such, in behalf of the plaintiff, a
written contract with Francis Leonard for the construction
of water works for the village, and the defendants, of whom
he was one, executed and delivered to them the bond in suit,
in favor of the village, dated October 17th, 1892, and con-
ditioned to secure his faithful performance of such contract,
failing which the obligors. were to pay all damages which

should be sustained by the village, by reason of such failure. The so-called board voted to hold the bond subject to further action, and it was never afterwards accepted. It recited that Francis Leonard had entered into a contract with the plaintiff " through its Board of Water Commissioners," a copy of which was annexed and made part of the bond.

The contract provided that the work should be done according to certain annexed plans, specifications and conditions, but the village engineer should have " power to make such changes in the forms, dimensions and alignments of the work, as may, in the opinion of the engineer and water commissioners be necessary for the proper fulfillment of the work," and that he was " to make all measurements and decide as to the quality of all materials, and all work or materials must be satisfactory to him and subject to his rejection or approval." Approximate estimates of the amount of work done and materials furnished by the contractor, were to be " made monthly by the engineer, on or before the 10th of each month, during the progress of the work, and after approval by the Board of Water Commissioners, an order for 85 per cent of said estimate will be given upon the treasurer of the water fund, for the work done up to the 1st day of said month. The 15 per cent of the amount due the contractor will be retained by the water commissioners of the village of Chester for the faithful performance of the work, until the final estimate and acceptance by the Board of Water Commissioners and engineer." The right was reserved to the village " to make such changes in the amounts of ten-inch and eight-inch main pipes, to be used in this system of water works herein agreed to be built, as may be determined upon by its Board of Water Commissioners." Bonds were to be given to the amount of $10,000, for the faithful performance of the work. It was provided that any cash payments made before the completion of the work should " in no way affect or alter the conditions of the contract," and that the final payment should " be made within 30 days after the water has been let into the pipes and the work publicly tested, and accepted (in writing) by the Board of Water Commissioners and engineer, provided that within that time

the party of the second part shall have given a bond with satisfactory sureties and in proper amount, conditioned to keep the works in repair for one year from the date of such acceptance, without expense to the village of Chester." Work was to be begun within ten days, the greater portion completed in 1892, and the whole by June 1st, 1893. The payments were to be determined on an agreed scale of prices, by the quantities of excavations made, pipes laid, etc., as specified. The quantities were estimated approximately in the contract, but the engineer was to have power to increase or diminish them, when this was deemed by the board to be for the interest of the village.

None of the defendants knew that the members of the so-called board had not qualified, at the date of the contract, nor before this suit. The board made no direct oral representation to Leonard as to its being duly organized.

Leonard began work soon after October 24th, 1892, and had completed part of the job and been paid about $4,000, when in April, 1893, he became financially embarrassed and told the board (which since November 28th, 1892, had become duly organized for the transaction of business by the due qualification of all its members) that he must abandon the contract. At the same time he proposed to the board that he should make their treasurer his agent by papers of the following form:

" To the President and Water Board of Chester:

" *Gentlemen* :—Please pay George M. Roe, Esq., my agent, all moneys due or to grow due to me under any contract with you or the Village of Chester entered into by me, for the purpose of paying my employees in the performance of said contract, and to pay for such supplies as are to be furnished by me under said contract.

" Respectfully yours,<br>" Francis Leonard.

" Dated, Chester, April 19, 1893."

" To G. M. Rowe, Esq.:

" Dear Sir :—I have requested the Water Board to pay all sums due or to grow due to me to you for the purpose of pay-

ing the employees under me, and I request you to make such payment to them, or for material furnished.

"Yours truly,

"FRANCIS LEONARD."

This proposition was accepted and the papers signed and delivered. Thereafter all moneys needed to pay the labor or supply account used in the construction of said water works by said Leonard, were paid to Mr. Roe, and said accounts were thereafter paid by him after the amounts due had been figured up by Leonard, and very little of said amounts passed through the hands of Leonard thereafter, he having in a few instances paid bills and being repaid by Mr. Roe.

The original contract provided that if at any time Leonard should be in arrears to his employees, the village might pay them, and deduct the sums so paid from the contract payments otherwise coming to him.

Leonard completed all the work required by the contract, except such part as was changed or omitted by the board. Prior to April 19th, 1893, he had received $1,350 from the village, all without any engineer's estimates, and said payments, exceeding $1,300, were paid in excess of the 85% limit fixed in the contract, and were made without any engineer's estimate. At the date of said arrangement there was money due to said Francis Leonard for work done and supplies furnished under the contract, but not enough to pay his labor account then due. After April 19th, 1893, payments were made by Roe without regard to the engineer's estimate and largely in excess of the 85% limit. After April 19th, 1893, the board and village did not reserve the 15% required by the contract, but made payments in excess of the amount due, and without any engineer's certificate or estimate. Leonard continued carrying out the contract after said date. The board and Leonard each kept track of the labor furnished, and upon the recommendation of Roe ordered payment of the same.

Sundry changes in details of construction were ordered from time to time by the engineer, and made by the contractor,

which are more particularly described in the opinion of the court on page 506. At a place called "Deep Cut" the pipe line was lowered in rock about two feet beyond what the contract called for. Leonard claimed extra for the above rock excavation and for numerous other things. The board claimed that a part of the distance of laying pipes had been made easier by changing the plan, and that this saved Leonard $800, and must be allowed as an offset to all claims for extras except the amount of $170.36 agreed upon. To this Leonard finally consented. A part of $1,000 paid February 16th, 1893, without any estimate, was for the extra work claimed by Leonard in the "Deep Cut" so-called. This was agreed to on August 15th, 1893, and neither at this or at any succeeding time did the board make any claim upon any of the defendants for damages from breach of said contract.

There was a delay in completing the work, but this was not due to the neglect of the contractor. It was completed to the satisfaction of the engineer in charge, who furnished Leonard with a full report, showing the difference between the contract price and the actual cost of the water works, and the work was accepted by the village. The final estimate was prepared by the engineer on September 30th, 1893.

The total cost of the water works, estimated at the prices under the contract and the quantities found in the engineer's final estimate, was $15,285.76, and there was in fact paid to Leonard and George M. Roe $18,788.37. All of said amount so expended was for labor and supplies done upon said contract and the changes made therein. There was no evidence offered to show that Francis Leonard knew anything of the defective organization of the board, and he supposed that the board was duly organized from the call for bids and the subsequent acts and conduct of said board and its members, resulting in the execution of the contract and bond. All matters connected with the organization of the board of water commissioners were matters of record in the office of the clerk of said water board.

The bond in suit was a joint and several one by the defendant, Francis Leonard as principal, and his father, the defend-

Village of Chester *v.* Leonard et al.

ant Charles T. Leonard, and another, as sureties. Both the defendants live in Norwalk, Conn. Charles T. Leonard knew nothing of, and did not consent to or acquiesce in, the agreement entered into between Francis Leonard and the village by its water board on April 19th, 1893, nor said payments in excess of the amounts authorized by said contract, nor the payments without an engineer's estimate or certificate, contrary to the terms of the contract, nor the changes that were made in the plan. The commencement of the present suit was the first knowledge that Charles T. Leonard had of any claimed breach of said contract or bond; and he never was informed of any amount claimed as damages until he learned the same from the complaint in this case.

Francis Leonard, in making the new agreement to constitute Roe his agent for the purposes set out therein, in assenting to the changes of alignment and size of pipe, and in agreeing as to payment for extra rock excavation, was acting as contractor, and not as bondsman, or for the bondsmen. Final payment to him in the manner above described, had been made without requiring or at any time requesting him to give bond as proposed by the contract; and the village of Chester thereby waived the same.

Certain evidence offered by the plaintiff on the trial was excluded, the nature of which is sufficiently stated in the opinion, page 510.

One of the sureties on the bond died before the commencement of this action, which was brought against the principal and the surviving surety.

*Joseph A. Gray,* for the appellant (plaintiff).

The water commissioners were but the agents of the plaintiff, and third persons dealt with them at their peril. There was no deception or misrepresentation by the gentlemen acting as the plaintiff's water commissioners. *Pierce* v. *U. S.* 7 Wall. 666; *Sprague* v. *Cornish,* 59 N. H. 161. These acts were fully ratified by the plaintiff and its duly organized board of water commissioners. *Lord* v. *Cross,* 66 U. S. 185, 533; *Craus* v. *Hunter,* 28 N. Y. 389; *Brown* v. *Inhab. of Win-*

*throp*, 70 id. 305; *Hill* v. *Blackstone*, 2 Conn. 252; *Church* v. *Sterling*, 16 id. 388; *Hall* v. *Norwalk F. Ins. Co.*, 57 id. 105; *North Brookfield S. Bk.* v. *Flandro*, 161 Mass. 335. The bond recites that the contract was entered into with the plaintiff, through its water commissioners, and the defendants cannot now deny it. *Washington Ins. Co.* v. *Colton*, 26 Conn. 42; *Pond* v. *Hine*, 21 id. 519; *Olmstead* v. *Olmstead*, 38 id. 309; *D. & N. R. Co.* v. *Wilson*, 22 id. 448. A payment on the contract is a ratification of it; so is the bringing of a suit. *Hayden* v. *Inhabitants of Madison*, 7 Greenl. 76; *Fisher et al.* v. *School Dis. No.* 17, 4 Cush. 495; *Frick* v. *Trustees School Dis.*, 99 Ill. 167. No record of the acceptance of the bond or of making the contract was necessary. The changes made in the work were authorized by the contract, and necessary in the opinion of the engineer. This being so the defendants have no ground of complaint. It was the duty of the plaintiff to finish the contract work abandoned by Leonard on April 19th, with the least possible expense; and to this end Leonard remained and thereafter acted as the servant of the plaintiff. The reservation of the 15 per cent was a provision to protect the plaintiff, which it could waive. All the money is found to have gone into the works. The engineer's letter should have been received. It sufficiently complied with the requirements of the contract relating to estimates. The failure to furnish the bond for repairs is one of the items of damage incident to the abandonment of the contract. There was no waiver, express or implied, of this obligation.

· *J. Belden Hurlbutt* and *H. Whitmore Gregory*, for the appellees (defendants).

The power to make a contract like the one in question, did not exist till November 28th, 1892, over a month after making the bond and contract, and after some of the work had been performed. *Brown* v. *Mayor*, 63 N. Y. 242, 243; *Brady* v. *Mayor*, 20 id. 312; *People* v. *Flagg*, 17 id. 589. The power to ratify implies the power to make, and where there was no

power to make, there was no power to ratify. *Supervisors* v. *Arrighi*, 54 Miss. 668; *Nash* v. *St. Paul*, 8 Minn. 143; Mechem, Agency §§ 114, 115; *Marshall Co.* v. *Schenck*, 5 Wall. 781; *Smith* v. *Newburgh*, 77 N. Y. 136. To ratify, all acts must be with a knowledge of the defect, and an intention to ratify the contract as a whole. *Turney* v. *Bridgeport*, 55 Conn. 418; *Whittemore* v. *Hamilton*, 51 id. 153. The material changes released the bondsmen. *U. S.* v. *Corwine*, 1 Bond, 339; *Rees* v. *Berrington*, 2 W. & T., Ldg. Cas. in Eq; Story's Eq., § 324; Bisph. Eq., § 339; *Sneds' Executors* v. *White*, 3 J. J. Marshall, 525; *Miller* v. *Stewart*, 9 Wheat. 680; *Mayhew* v. *Boyd*, 5 Md. 102; Fell on Guar. and Sur., 518; *Leed* v. *Dunn*, 10 N. Y.469; *Rowen* v. *Sharp's Rifle Co.*, 33 Conn. 23; *Manufacturers' Bank* v. *Cole*, 39 Me. 188; *Evans* v. *Graden*, 125 Mo. 72; *Morgan* v. *Roe*, 32 Pac. Rep. 717; *Monday* v. *Stevens*, 61 Fed. Rep. 77. A surety on a building contract where the principal is to be paid by installments, is discharged if the principal is paid faster than the contract provides. *Gen. Nav. Co.* v. *Rolb*, 95 Eng. C. L. 550; *Colen* v. *Linden Dock Co.*, 2 Keen, 638; *Bragg* v. *Shaw*, 49 Cal. 131; *Clagget* v. *Salmeri*, 5 Gill & J. 197; *Curtis* v. *Hubbard*, 6 Met. 186; *Cassig* v. *Allspaugh*, 13 L. R. A. 413; *McPherson* v. *Willard*, 23 Mo. 249; *Monday* v. *Stevens*, 61 Fed. Rep. 77; *Herminis* v. *English*, 43 N. Y. 595; *Whyle* v. *Hightown*, 74 Tex. 306; *Wier Plow Co.* v. *Walmsley*, 110 Md. 242; *Simmons* v. *Grant*, 36 Mo. 439; *Morgan Co.* v. *Branchan*, 57 Fed. Rep. 179. The bond in suit was never accepted by the village of Chester, nor any notice given of any intention to hold the sureties for the performance of the contract. The repair bond was waived by the plaintiff. No notice was ever given the sureties of any acceptance of the bond, claimed breach of the contract, or of any amount claimed as damages, till they learned the claims from the pleadings in this case. Such notice was necessary to maintain suit against the sureties. *Craft* v. *Isham*, 13 Conn. 28; *Reynolds* v. *Edny*, 8 Jones, (N. Car. Law) 406; *Douglass* v. *Reynolds*, 7 Pet. 113; *Marsh* v. *Putney*, 56 N. H. 34; 2 Par. Cont. (8 ed.), 29.

BALDWIN, J. The complaint was adjudged insufficient on demurrer, for want of certain amendments; whereupon the plaintiff voluntarily amended it by inserting them. There is authority for the position that this waived any exceptions that could otherwise have been taken to the ruling on the demurrer, and that if the plaintiff in any such case is unwilling to assume the burden of proving what the amendment would introduce into the complaint, he should stand by his original pleading and seek a remedy by appealing from the final judgment which would then be rendered on the issues of law. *United States* v. *Boyd*, 5 How. 29, 51; *Birnbaum* v. *Crowninshield*, 137 Mass. 177; 1 Ency. of Pl. and Pr. p. 624; 6 id. p. 359; *Brown* v. *Saratoga Railroad Co.*, 18 N. Y. 495.

It is, however, unnecessary to express an opinion upon this point in the present case, as the defense which was made out upon the trial would have been equally a bar to the plaintiff's recovery, under the original allegations in the complaint. Had the demurrer been overruled, as the plaintiff now claims that it should have been, the defendants would have had the right to plead over. General Statutes, § 1014. We think it fair to assume that they would have availed themselves of this privilege, instead of allowing final judgment to go against them on the pleadings as they stood, and are therefore of opinion that even if there were error in the ruling complained of, the plaintiff was not injuriously affected by it, since if it had not changed its pleading, the defendants would have changed theirs, and the same result must, in either event, have been ultimately reached.

The parties to the construction contract of October 17th, 1892, were the village of Chester and Francis Leonard. In behalf of the village it was executed by certain individuals who had no authority to speak for it. They were, however, *de facto* public officers. There was a law under which they assumed to act, and the only defect in their authority arose from their omission to file the necessary bonds and take the prescribed oath of office. This defect was remedied during the ensuing month, and they thereby became the *de jure*

Board of Water Commissioners of the village.  The answer set up their want of authority to execute the contract, and to this it was replied that the village had " authorized, accepted and approved " their action in its behalf.  One for whom another has assumed to act may accept and approve what has been done in his behalf, though he never authorized it.  The averments in the reply as to acceptance and approval not having been denied, were admitted to be true.  Practice Book, p. 16, § 4.  They stated a ratification, which was equivalent to a prior authority.

It may be true that under the laws of New York the plaintiff could not, on October 17th, 1892, have authorized the execution of the contract in its behalf by a mere *de facto* board of water commissioners.  But on and after November 28th, 1892, it could have authorized the execution of such a contract by what was then a *de jure* board of water commissioners; and such authority would properly proceed from that board itself, which for that purpose was, in effect, the village.  The ratification pleaded would therefore be sufficient if it was an acceptance and approval by the Board of Water Commissioners, when duly organized, of what they had assumed to do before they were duly organized.  That such was the legal effect of their course of action, as set out in the finding of the Superior Court, is manifest.

The bond in suit, which bears even date with the construction contract, is one of the exhibits described in the complaint, and was made a part of it by express reference.  It runs in favor of the village, and recites that Francis Leonard had entered into this contract with it through its Board of Water Commissioners.  This estopped the defendants from denying the authority of the board to represent the village, both as to the contract and as to what was done in execution of it.  *Washington County Ins. Co.* v. *Colton*, 26 Conn. 42, 50.

The estoppel was sufficiently pleaded.  The bond was, in effect, set out in the complaint, and it appeared upon its face that its legal operation was necessarily such as to preclude the obligors from contesting either the proper execution of

the contract, or the right of the board to accept the security which they offered to give the village for its due fulfillment.

The fact that the board never formally voted to accept the bond, is immaterial. They took it into their possession to "hold subject to further action." That was a sufficient delivery, and this suit supplies the want of further action. The sureties on the bond were not entitled to express notice of the acceptance of their obligation, for it was absolute in terms, executed contemporaneously with the construction contract, and part of the same transaction. *White* v. *Reed*, 15 Conn. 457, 463.

This contract provided for monthly payments, during the progress of the work, of 85 per cent of the amount due for the preceding month, as that might be estimated approximately by the village engineer; the balance to be retained as security for the faithful performance of the contractor's obligations until the time of the final estimate and settlement; nor was it then to be paid over until the work had been publicly tested and accepted in writing, nor unless within twenty days from such acceptance Leonard gave a bond with sureties to keep the works in repair, at his own cost, for one year. Payments largely in excess of 85 per cent of the contract prices for work done were, however, made both before and after April 19th, 1893, and in most cases without any estimate of the engineer. On April 19th, 1893, Francis Leonard, after stating to the Board of Water Commissioners that he must abandon the contract, made, by agreement with the board, its treasurer his agent to receive any moneys thereafter to become due under the contract, and therefrom to pay his employees and those from whom materials were purchased. After this, substantially all moneys due under the contract were paid out by the treasurer of the board in the manner thus provided. The final payment due to the contractor was made without requiring any bond for keeping the works in repair, the giving of any such security being waived by the village. Material changes were also made, by order of the engineer, from time to time, in the details of the plan on which the construction contract

was based. A line of pipes to be laid in a highway for a distance of over 2,500 feet was transferred to private property. Another line was changed from one street to another, and considerably lengthened. The position of another line was shifted for a distance of over a mile, so as to be at some points 200 feet from that marked on the original plans. The dimensions and level of some of the pipes were also varied, so as to call for additional expense on the part of the contractor. None of these changes were necessary to the proper fulfillment of the work, and none were made known to the sureties on the bond; nor did they know of or authorize the variations adopted in the manner of making payment under the contract, or of disbursing the moneys paid.

So far as concerns the changes in the line, site, level, or dimensions of water pipes, they were all warranted by the provisions in the contract that " the quantities of the work to be done," as specified, were approximate only, and could be increased or diminished by the Board of Water Commissioners, and that the engineer could make such changes in the " forms, dimensions, and alignment of the work " as might in his opinion and that of the Board of Water Commissioners be necessary for its proper fulfillment. It was for them and not for the courts to determine whether the changes ordered were in fact necessary. Sureties for the performance of a contract so framed must be presumed to contemplate the making of such changes ; and as the defendants did not stipulate for any right to participate in determining whether they should be made, there was no occasion to notify anyone but the principal contractor of the fact that they had been ordered.

It is contended by the defendants that " alignment " means simply an " adjusting to a line," and that a change in alignment cannot be construed to cover a change of line. The word in question carries a wider meaning than that thus assigned to it. It signifies not only the act of adjusting to a line, but the state of being so adjusted, and in terms of engineering is used to denote the ground plan of a road or other work as distinguished from its profile. Webster's International Dict.

But the variations in the mode of payment were substantial, and no power to make them had been reserved. The sureties on the bond, as well as the village, had an interest in its keeping control of the monthly balances of 15 per cent of the engineer's estimates, until the job was completed; for they would constitute a fund to meet any claims for damages from breach of contract that might then be made. They had an interest also of another kind in having the monthly payments graded by such monthly estimates. It served to keep the contractor up to his work; while to pay him without any estimates might well lead to mistakes and delay, if not to his drawing money faster than he earned it. The arrangement by which he constituted the treasurer of the board his financial agent was one that could not properly be made, without consulting the sureties. The treasurer was less an agent for the contractor than a representative of the village. His authority derived from Leonard was given to him because of his public office, and his first duty continued to be that which he owed to the plaintiff. It might call upon him to act adversely to the interests of his new principal under the contract; and at best put him in the position of one serving two masters.

The waiver of the bond for keeping the works in repair for a year after their acceptance withdrew also a security on which the sureties had a right to rely; for if the job were so poorly done as to require repairs within the year, and the village should claim that this was due to a failure to observe the conditions of the contract, they might have been held for the resulting damages, and in that event could have claimed to be subrogated to the benefit of the second bond.

By these material departures from the contract, respecting the mode of determining, making and applying the payments, for which it stipulated, the sureties were released. Their obligations could not be thus extended without their consent, and the attempt to do it destroyed the ground of their liability by substituting a new contract for that to which their bond referred. *Rowan* v. *Sharps' Rifle Mfg. Co.*, 33 Conn. 1, 23. When Francis Leonard stated to the Board of Water Com-

missioners that he must abandon the contract, and submitted to it the proposition that he should make its treasurer his agent, two courses only were open to it for the preservation of its legal rights. It might reject the proposition and look to the sureties ; or it might accept it, provided their consent were asked and obtained. Neither of these things was done. Instead, the board, without consulting the sureties, agreed with Leonard that notwithstanding his confessed inability to carry through the job on his own credit, he might proceed in its execution, in consideration of his making its treasurer his financial agent.

The contract provided that, should Leonard fail to pay any wages or other account that might become due from him in its execution, the board might pay them out of any funds due to him, but in no case without the written approval of the engineer. After the arrangement of April 19th, the wages of employees were paid by order of the board upon the recommendation of its treasurer, and without any certificate or estimate from the engineer.

It may be that all this worked no injury to the sureties ; but whether it did or not, the result is the same. Any variation of the contract to which they did not assent was fatal, notwithstanding it might operate directly for their benefit. *Miller* v. *Stewart*, 9 Wheat. 680 ; *Board of Com'rs* v. *Branham*, 57 Fed. Rep. 179.

This defense was sufficiently pleaded in the answer, and the facts upon which it arose were substantially admitted by the reply.

The plaintiff contends that it is fully met by the provision in the contract that " any cash payments made before the completion of the work shall in no way affect or alter the conditions of this contract." This manifestly referred to the accompanying conditions as to the responsibility of the contractor to the village for the character of the work done, and the continuance of such responsibility until he should be released by the formal action of the board, with the concurrence of the engineer. It did not, as against the sureties, justify a material variation in the mode of payment, or in

the manner in which the moneys, when paid, were to be disbursed.

It is also claimed that the sureties had constructive notice from the public records, including those of the Board of Water Commissioners, of all or most of the various departures from the construction contract. Such is not the law. A surety is not bound to be on the watch for variations which may be made in the obligations of his principal. But even had actual notice of whatever was done been promptly given to the sureties on this bond, it would have been unavailing to enlarge their liability. That could result only from knowledge and acquiescence both.

The letter of the engineer, written in February, 1893, to the Board of Water Commissioners, in which, after stating that Leonard had requested an estimate, and is apparently entitled to one, he recommends a payment of a lump sum of $1,000, or $1,200, as, in his opinion, the work performed was certainly worth that amount, was properly excluded. It was not an estimate such as the contract required, and did not justify, as against the sureties, the payment of $1,000, made on the strength of it. Even could it be considered an estimate that the work done was worth $1,000, not more than 85 per cent of that amount could have been properly paid on it.

It is unnecessary to consider the rulings under which certain evidence offered to show that the plaintiff had suffered damage by breach of the construction contract, was excluded, as the defense of the sureties is an absolute one, as respects the entire cause of action.

The plaintiff also claimed in the trial court, and claims here, that what took place on April 19th amounted to an abandonment of the contract by Francis Leonard, and the appointment by the board of its treasurer as the agent of the village to complete the job, as being the most economical mode of accomplishing that object; the latter paying out, as Leonard's agent, only what the village owed to him, and making all other disbursements as the treasurer of the board. This state of facts was set up in the plaintiff's pleadings,

but denied by the answer, in which it was averred that what was really done was to substitute, between Leonard and the village, a new agreement for the provisions of the original contract. The issues thus raised were found for the defendants, and the facts set out in the special finding fully support that conclusion.

The only remaining ground of appeal which has sufficient merit to call for its discussion, is that judgment should have been rendered against Francis Leonard, the principal in the bond, even if it went in favor of the surviving surety, who was the other defendant. This is a point not raised in the trial court, and resting on General Statutes, § 1108, which permits a judgment against a part only of the defendants in such an action, but does not require it. The plaintiff made thirteen claims of law on the trial, and the only one which could by possibility cover or relate to that now presented is the last in order, which reads thus: " That the defendant, Francis Leonard, was a surety on the bond, and he knew all the facts relative to any change made relative to the arrangement of April 19th, and regarding the extras, and that all of the defendants were bound by the constructive notice which they had of the matters of record of the Board of Water Commissioners, of the village records, and of the records of Orange County." This language, far from being such as to direct the attention of the Superior Court to any several liability of Francis Leonard, as principal in bond, was rather calculated to divert attention from it, since it describes him as a surety, and charges all the defendants with constructive notice of the doings of the board. Under these circumstances, there was no error in not rendering a judgment for which the plaintiff did not ask, and which, in view of the manner in which its pleadings were framed, it might well have been assumed that it did not desire.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.