## SESSIONS *v.* THE STATE.

1. An act which declares that the government of the City of Sandersville shall consist of a mayor and five aldermen, who are constituted a body corporate under the name and style of "the Mayor and Council of the City of Sandersville," and then proceeds to define the powers of the City of Sandersville, referring in every instance to that corporation as the "City of Sandersville" or the "corporation of Sandersville," and contains a clause expressly repealing all laws relating to the town of Sandersville, constitutes the corporation of Sandersville a city.

2. Legislation having the effect to change the town of Sandersville into the City

of Sandersville is constitutional under an act entitled an act "to alter and amend the several acts incorporating the town of Sandersville, and to confer upon said town of Sandersville a municipal government, with all the rights and privileges usually enjoyed by citizens of Georgia, as herein set forth."

3. When at a trial under an indictment for stabbing it appeared from the evidence for the State that the accused was guilty of the offense charged, and from the statement of the accused that he was guilty of assault and battery only, it was not erroneous to charge the jury that if they believed the accused was not guilty of the offense of stabbing they might convict him of the offense of assault and battery.

Submitted February 17,—Reargued March 17,—Decided March 26, 1902.

Accusation of stabbing.   Before Judge Taliaferro.   City court of Sandersville.   January 13, 1902.

*G. H. Howard* and *Evans & Evans,* for plaintiff in error.

*J. E. Hyman, solicitor,* contra.

COBB, J.   1. An examination of the act creating the city court of Sandersville (Acts 1901, p. 164) shows that the court is located in Sandersville, which is the county site of Washington county, and that as to jurisdiction, powers, etc., the court thereby created appears to be a city court within the meaning of that term as used in the constitution.   See *Welborne* v. *State,* 114 *Ga.* 793.   Whether the judgments of that court can be reviewed in the Supreme Court on direct writ of error depends upon the determination of the question as to whether Sandersville was a city at the date of the approval of the act which created the court.   In 1872 (Acts 1872, p. 248) the General Assembly passed an act which provided "That the municipal government of the City of Sandersville shall consist of a mayor and five aldermen, who are hereby constituted a body corporate, under the name and style of the Mayor and Council of the City of Sandersville."   The act then proceeds to define the powers of the City of Sandersville, and the corporation created by the act is referred to in the act either as the City of Sandersville or the corporation of Sandersville.   The only time in which the expression "town of Sandersville" appears in the act is in the last section, which expressly repeals all acts incorporating the town of Sandersville.   The language of the act is sufficient to indicate a legislative intention to incorporate Sandersville as a city, and the language of the first section of the act is equivalent to a legislative declaration to this effect.   This case differs from the case of *Savannah, Florida & Western Railway Company* v. *Jordan,* 113 *Ga.* 687, in this:

The act amending the charter of the town of Valdosta provided that the municipal government of the City of Valdosta shall be vested in a mayor and six councilmen, who are hereby constituted a body corporate under the name and style "of the Mayor and Council of Valdosta." In the act Valdosta is sometimes referred to as a city and sometimes as a town. There was no express declaration in the act that the town of Valdosta should thereafter be known as a city, and there was nothing in the corporate name to indicate that the legislature intended it should be a city, the word "city" being entirely omitted from the corporate name. There was in the act in relation to Valdosta neither an express declaration that Valdosta should be a city, nor anything which was equivalent to such a declaration.

2. The language in the body of the act in relation to Sandersville being sufficient, in our opinion, to incorporate that place as a city, the question arises whether the title to this act was broad enough to authorize legislation changing the town of Sandersville into the City of Sandersville. The title was in these words: "An act to alter and amend the several acts incorporating the town of Sandersville, and to confer upon said town of Sandersville a municipal government, with all the rights and privileges usually enjoyed by citizens of Georgia, as are herein set forth." Upon a casual reading of this title the impression would be created that the purpose of the act was simply to change or modify the laws in reference to the town of Sandersville, leaving that corporation still a town; there being nothing in the title expressly indicating an intention to change the character of the municipality. Whether the title is broad enough to cover legislation changing Sandersville from a town to a city, depends to a large extent upon the meaning of three words in the title: "alter," "amend," and "municipal." "Alter" has been defined: To make a change; to modify; to vary in some degree. Black's Law Dict. To alter means to make a thing different from what it was. 2 Am. & Eng. Enc. Law (2d ed.) 179. To cause to be different in some respect; make some change in; vary in some degree, without making an entire change. Standard Dict. To make otherwise; to change in some respect, either partially or wholly. Webster's International Dict. "Amend" has been defined: To improve; to make better by change or modification. Black's Law Dict. To make better; to change from bad to better.

2 Am. & Eng. Enc. L. (2d ed.) 305. "Municipal" has been defined to be: Of or pertaining to a town or city, or to its corporate or local government. Standard Dict.; Webster's International Dict. The word "alter," it will be seen, is capable of two meanings. If the word as used in the title be construed to mean a change in the acts incorporating the town of Sandersville of such a kind as to entirely change the character of the municipality, then that part of the act which creates the City of Sandersville would not be different from what is expressed in the title. If the word "amend" be understood as indicating a purpose to make a radical and material change in the laws in reference to the town of Sandersville, then the change of Sandersville from a town to a city would not be entirely variant from the purpose indicated by the use of this word in the title. The title indicates not only a purpose to alter and amend the laws incorporating the town of Sandersville, but it indicates a legislative purpose to confer a municipal government upon that town. "Municipal" may refer to either a town or a city, and this language would be sufficient to authorize the General Assembly to confer a municipal government upon the locality formerly known as the town of Sandersville. It is an equivocal expression. This view of the matter is strengthened when we keep in mind the fact that the expression "town of Sandersville" is itself ambiguous. It may mean either a corporation of that name or simply a collection of people at that place independent of the fact of incorporation. A town is a collection of people, and it may be either an incorporated or an unincorporated town. See, in this connection, Political Code, § 685. If the expression "town of Sandersville" was used in the title to this act in the sense of a corporation of that name, the purpose of the act might be simply to change the laws in reference to that corporation, without changing the character of the corporation. On the other hand, if the town of Sandersville referred to in the title is simply a collection of people within the territory commonly known as the town of Sandersville, then any legislation having the effect of conferring upon these people a municipal government, whether that government be a town or a city government, would be authorized by the title. The decisions of this court will show that very great liberality has been allowed in determining what is the purpose indicated by the title of an act; some of them going to the extent of holding apparently that matters remotely connected

with the purpose of the act as indicated by the title, if not to some extent foreign thereto, have been sustained as being not altogether foreign to the purpose indicated by the title. See *Welborne* v. *State,* 114 *Ga.* 793, and cases cited. Where the language of a title is equivocal, and it is not altogether certain that the provisions in the law are entirely foreign to the purpose indicated in the title, it is the duty of the court to sustain the legislation. In any view of the matter, where the question is not free from doubt, the legislation should be upheld. *Welborne* v. *State,* supra. In view of the fact that the language of the title under consideration is ambiguous, and of the fact that the question is not altogether free from doubt, and in view of the previous decisions of this court on the subject, we are justified in holding the act under consideration a valid and constitutional law.

3. Having determined that this court has jurisdiction to review the judgments rendered in the city court of Sandersville, we will proceed to a discussion of the questions raised in the bill of exceptions. The accused was placed upon trial, charged with the offense of stabbing. The evidence for the State authorized a verdict of guilty for this offense. The statement of the accused, while it authorized a finding that the accused was not guilty of the offense of stabbing, warranted a verdict that he was guilty of the offense of assault and battery. Complaint is made that the court erred in charging the jury, in substance, that if they found upon investigation that he was not guilty of the offense of stabbing, but was guilty of the offense of assault and battery, he might be convicted of the latter offense. We see no error in this charge, under the facts of this case. It is settled by former decisions of this court that under an indictment for stabbing the accused can be lawfully convicted of the offense of assault and battery, in a case where there is evidence of an assault and battery independently of the stabbing. *Whilden* v. *State,* 25 *Ga.* 396; *Rives* v. *State,* 74 *Ga.* 375. In the present case, as has been said, the statement of the accused authorized a verdict of assault and battery, independently of the evidence for the State, which showed a stabbing; and therefore the verdict of the jury must have been based upon the statement of the accused. This being so, the question whether there can be a verdict for assault and battery under an indictment for stabbing, when the evidence shows no other assault and battery than the stabbing, does

not arise. This was the contention of counsel for the accused in their brief. It would seem that in a case of stabbing, if all of the evidence and the statement of the accused showed that he was either guilty of stabbing or guilty of no offense, a charge of the character under consideration in this case would be error. It has been held that in such a case it is not error to refuse to charge the law of assault and battery. *Ward* v. *State*, 56 *Ga.* 408. The evidence authorized the verdict, and there was no error requiring the granting of new trial.

*Judgment affirmed. All the Justices concurring, except Little and Lewis, JJ., absent.*