11253, 11254.    MORROW TRANSFER AND STORAGE COMPANY *v.* WELLS BROTHERS COMPANY; and *vice versa.*

STEPHENS, J. 1. A builder's contract providing for the erection of a building, which is to be of such size and dimension as to require its foundation to be constructed with special reference to the character of the ground upon which it is to rest, contemplates not only the erection of a properly constructed building under the terms of the contract, but also contemplates the construction of a suitable and safe foundation for the building to rest upon.

2. In such a contract which provides for the erection of the building according to certain plans and specifications which call for a certain character of foundation, where there is a provision that " the owner may make such alterations, changes, or additions to the work as may be required, without invalidating the terms of the contract," and that the builder may " at any time during the progress of this work make any additions to, or alterations or deviations from the drawings or

specifications without invalidating this agreement," an alteration afterwards made in the contract, plans, or specifications, providing for a different kind of foundation and a different treatment of the ground upon which the building is to rest, which is found, after the work has progressed, to be necessary in order to support the structure and render it safe, is not a violation of the contract, but is only such an alteration or deviation as is contemplated in the contract providing for a properly constructed building on a good and appropriate foundation. This is true even though at the time of the execution of the contract there was nothing in the nature of the work contemplated or in the character of the ground upon which the building was to be located which would then indicate that such an alteration in, or deviation from, the foundation plans might become necessary for the purpose of carrying out the builder's contractual obligation to erect a properly and safely constructed building. More especially is this true when the contract states that test borings and samples of the soil have been made and are subject to the inspection of bidders, but that the soil conditions are not guaranteed.

3. A contract entered into by the builder with a third person, by the terms of which the third person obligated himself to do and perform for the builder certain work developing upon the builder under his contract with the owner, such as excavating for the foundation of the building and shoring and protecting the adjoining walls and assuming responsibility for their safety, which provided that the subcontractor would perform his obligations under the contract " in conformity with the plans, drawings, and specifications, including all revisions to date made by [the architect], which said plans, drawings, and specifications are signed by the parties hereto and are hereby made a part of this agreement according to the true intent and meaning thereof," obligated the subcontractor to perform his obligations under the subcontract under any altered or changed conditions resulting from any alteration in or deviation from the plans or specifications contained in the builder's contract with the owner and permitted under the provisions of that contract.

4. Where, after the execution of the builder's contract with the owner, it was found that the character of the ground rendered it necessary, in order to obtain a building properly and safely constructed as contemplated in the contract, to abandon the original plans calling for a concrete foundation, and to substitute therefor an alteration in such plans providing for the erection of the building upon a foundation resting upon piles, such alteration in the plans being necessary for the purpose of obtaining a properly and safely constructed building upon an appropriate foundation, was on alteration permitted under the provision of the contract; and the subcontractor, being bound to perform his obligations contained in the subcontract, in conformity with and with reference to any alteration in the plans as permitted under the builder's contract with the owner, was bound to perform his obligations to excavate, shore, and protect the adjoining walls, with all additional risks and hazards attendant upon the construction of a foundation built on piles. He being bound to perform the subcontract in conformity with any alterations in the plans or specifications permitted by the builder's

contract with the owner, his obligation to so perform is in no wise affected or lessened by the fact that the specific alteration afterwards made by the builder and the owner in the plans and specifications was not expected by the subcontractor when executing the subcontract, or that he was assured by the builder that the particular alteration would not be made. Especially is this true when the subcontractor before entering into the contract had notice that no guarantee was made as to the character of the ground upon which the foundation was to rest, and where the builder's contract with the owner provided in the plans and specifications that test borings and samples of the soil had been made and were subject to inspection, but that the soil conditions were not guaranteed.

5. The subcontractor being bound to the builder to perform his contractual obligations under such altered conditions, permitted by, and made in pursuance of, the builder's contract with the owner, a demand by the builder that the subcontractor alter the plans of his work accordingly, and perform his contract under such altered conditions and for such extra compensation as the contract provided should be paid to him should alterations be made in the manner in which his contract was to be performed, did not amount to a breach of the subcontract by the builder, and the subcontractor had no right to rescind the contract upon the ground that the contract had been repudiated by the builder.

6. This being a suit by a subcontractor against the builder, to recover on a quantum meruit, after having attempted to rescind his contract on the ground of its having been breached by the builder, the trial judge, in view of the above rulings, did not err in his rulings on the exceptions of law and fact to the auditor's report, and in directing a verdict for the defendant.

See, in this connection: Ashley *v.* Henahan, 56 Ohio St. 559 (47 N. E. 573); American Surety Co. *v.* Scott, 18 Okl. 264 (90 Pac. 7); Daly *v.* Busk Tunnel Ry. Co., 129 Fed. 513 (64 C. C. A. 87); Guaranty Co. *v.* Pressed Brick Co., 191 U. S. 424 (24 Sup. Ct. 142, 48 L. ed 242); United States *v.* Freel (C. C.), 92 Fed. 299; Id., 186 U. S. 309 (22 Sup. Ct. 875, 46 L. ed. 1177); Northern Light Lodge *v.* Kennedy, 7 N. D. 146 (73 N. W. 524); Hormel *v.* American Bonding Co., 112 Minn. 288 (128 N. W. 12, 33 L. R. A. (N. S.) 513); People's Lumber Co. *v.* Gillard, 136 Cal. 55 (68 Pac. 576); Dorsey *v.* McGee, 30 Neb. 657 (46 N. W. 1018); Village of Chester *v.* Leonard, 68 Conn. 495 (37 Atl. 397); Hayden *v.* Cook, 34 Neb. 670 (52 N. W. 165); United States *v.* Walsh, 115 Fed. 697 (52 C. C. A. 419); McLennan *v.* Wellington, 48 Kan. 756 (30 Pac. 183); Howard County *v.* Baker, 119 Mo. 397 (24 S. W. 200); Getchell *v.* National Surety Co., 124 Iowa, 617 (100 N. W. 556); Doyle *v.* Faust, 187 Mich. 108 (153 N. W. 725); Kretchmar *v.* Bruss, 108 Wis. 396 (84 N. W. 429); Shields *v.* City of New York, 84 App. Div. 502 (82 N. Y. Supp. 1020); Sessions v. State, 115 Ga. 20 (41 S. E. 259); Davenport *v.* Magoon, 13 Or. 3 (4 Pac. 299, 57 Am. Rep. 4); Words and Phrases, vol. 1, p. 360.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Jenkins, P. J., and Hill, J., concur.*

DECIDED MARCH 4, 1921. ADHERED TO ON REHEARING MARCH 5, 1921.

Exceptions to auditor's report; from Fulton superior court—Judge George L. Bell.   October 14, 1919.

Application for certiorari was denied by the Supreme Court.

*Daniel MacDougald, John A. Sibley,* for plaintiff.

*Rosser, Slaton, Phillips & Hopkins, Smith, Hammond & Smith,* for defendant.