L. WAYNE FURTNEY ET AL. *v.* SIMSBURY ZONING COMMISSION ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

586

Argued June 3—decided July 14, 1970

*Valentine J. Sacco,* for the appellants (plaintiffs).

*Peter B. Sullivan,* for the appellee (named defendant).

*Bertlen F. Turner,* for the appellee (defendant Fitzgerald).

RYAN, J. On August 15, 1966, the defendant James Fitzgerald applied to the zoning commission of the town of Simsbury for a change of zone for two parcels of land which, together, contained about 12.29 acres located on the easterly side of Bushy Hill Road and bounded in part by Stratton Brook Road on the north. Fitzgerald had an option to purchase this land. The requested change, from zone R-40 (single family residence zone) to zone B-3 (designed business development zone), was sought in order to build, pursuant to article 10 of the Simsbury zoning regulations, a shopping center with a total building area of 40,000 square feet and 404 parking spaces. A plot plan of the proposal was also submitted which gave the location and dimensions of buildings and the approximate distance from the nearest crossroad.

The application was referred to the town plan commission pursuant to § 8-3a of the General Statutes and the Simsbury zoning regulations, article 10 § A (2) (c), and on September 27, 1966, that body voted to recommend that the application be denied

on the ground that the proposed change conflicted with the Simsbury comprehensive plan and with the present plan of development for Simsbury; that Bushy Hill Road was inadequate to meet the projected traffic flow; and that the proposed location was not suitable for a decentralized neighborhood shopping center.

On October 24, 1966, a hearing was held before the defendant zoning commission, at which time the report of the town plan commission was read. The defendant Fitzgerald then presented evidence in support of his application, and the opponents of the proposal were given an opportunity to challenge this evidence, to introduce their own evidence, and to question thoroughly certain members of the defendant zoning commission concerning both the appointment of those members to the commission and the questions raised as to their qualifications to sit on this particular application.

On November 28, 1966, at its executive session, the zoning commission, by a two-thirds vote (4-2), granted the requested zone change and stated the following as its reasons: (1) The population of the town is expanding rapidly, and there is every indication that the trend will continue; present shopping facilities are inadequate, with the center of town being heavily congested during peak shopping periods. (2) Adequate expansion of existing facilities is not possible owing to terrain and limited space. (3) The location at Bushy Hill Road and Stratton Brook Road is near the geographic center of town and is served by two good highways, giving ready access from all areas. (4) Few properties will be directly affected, and the developer offers to provide an adequate buffer zone to protect them. (5) At the other side of Stratton Brook Road, the

zoning is industrial and houses the powder magazines of the Ensign Bickford Company. Under the zoning regulations (art. 10), site plan approval by the zoning commission and review by the town plan commission are required before a building permit may be issued.

From the action of the zoning commission granting the change of zone, the plaintiffs appealed to the Court of Common Pleas. From the judgment of the trial court dismissing the appeal, the plaintiffs have appealed to this court.

In the trial court, the plaintiffs introduced evidence for the purpose of proving that certain members of the zoning commission were disqualified and should not have sat on the Fitzgerald application. The court made a limited finding on this issue and concluded that the challenged members of the commission were not disqualified. The plaintiffs assign error in this conclusion, in the failure of the court to find certain facts which were claimed to be admitted or undisputed, and in the finding by the court of certain facts without evidence. Of the numerous assignments of error concerning the finding, the plaintiffs have pursued only three in their brief. Assignments of error not pursued in the brief are deemed to be waived. *Strimiska* v. *Yates,* 158 Conn. 179, 181, 257 A.2d 814; *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619. As to the three assignments pursued in their brief, the plaintiffs have not established any failure on the part of the trial court to include in the finding any fact which was material and was admitted or undisputed. The trier is the judge of the credibility of witnesses. *Banks* v. *Adelman,* 144 Conn. 176, 179, 128 A.2d 534.

The plaintiffs assign error in the refusal of the trial court to conclude that commission members

Jonathan Eno, Jr., and John J. Pivko, Jr., were disqualified to sit as members of the commission in the instant case. The trial court heard evidence concerning the plaintiffs' claim and in a limited finding found the following facts: Between August and November, 1966, Eno was a member of the defendant commission and an officer of the Simsbury Bank and Trust Company, which was the only commercial bank in the towns of Simsbury and Avon. When the defendant Fitzgerald opened a food store in Avon in February, 1957, he borrowed $15,000 from the Simsbury Bank and Trust Company. This loan was repaid by him in three years. When he opened his store he lived in Granby, and the same bank held a mortgage on his home. In 1959 he purchased a home in Simsbury and assumed the mortgage on the house which was held by a different bank. In 1966 he moved to another house in Simsbury, and this home was subject to a mortgage held by the Simsbury Bank and Trust Company. Approximately 90 percent of the commercial banking in connection with Fitzgerald's store is conducted with the Simsbury Bank and Trust Company, where he and his wife have a joint checking account. Fitzgerald has been in the bank and its branch office in Avon only four times a year during the time he has done business with it. He has never seen Eno in the bank or talked to him on the telephone. He and Eno have known each other for about twenty years, but not socially. He addresses him as "Mr. Eno" and does not call him by his first name. Eno has been to Fitzgerald's store to make a purchase six times in a period of eleven years. They are members of the same golf club.

In 1967, when Eno was in the hospital following a heart attack, Fitzgerald sent him a basket of fruit.

If his application for a change of zone were granted, Fitzgerald intended to erect a shopping center on the property and to open another food store there. He did not intend to finance the construction of the shopping center through a loan from the Simsbury Bank and Trust Company. He expected to arrange his financing with an insurance company. He probably would continue to do his commercial banking with the Simsbury Bank and Trust Company. Eno knew that Fitzgerald did his commercial banking with the Simsbury Bank and Trust Company, that the bank held a mortgage on his home, and that he had filed the application for a change of zone. In 1963, Eno had joined with David C. Mahoney, Jr., and Butler W. Andrus in looking into the possibility of changing the zone of the property concerned in the instant case and was in accord with his associates that it would be a suitable place for a business or a shopping center. Eno had not made up his mind on Fitzgerald's application before the hearing and had no reason or expectation to believe that the Simsbury Bank and Trust Company would be involved in the financing of the proposed shopping center. The chairman of the defendant commission had discussed the possibility of disqualification with Eno prior to the hearing of Fitzgerald's application and believed that Eno had disqualified himself, although Eno had not said yes or no definitely. Eno finally told the chairman of the commission that he would not disqualify himself from sitting on the defendant Fitzgerald's application but would disqualify himself from sitting on an application involving the airport which was to be heard on the same day.

As to John J. Pivko, Jr., the trial court found that Pivko had been called by the secretary of the defendant commission to sit as an alternate sometime in

1962 or 1963. He sat as such an alternate fifteen to twenty times. He was also asked to sit as an alternate on the defendant Fitzgerald's application. He was not sworn in as an alternate either before or on the night of the hearing on Fitzgerald's application. He sat on Fitzgerald's application, heard the evidence presented, and voted on the matter.

From these facts the trial court concluded that Eno was not disqualified to sit on the matter and had not prejudged it, and that Pivko was not disqualified to sit on the case.

"Following the decision of this court in *Low* v. *Madison,* 135 Conn. 1, 60 A.2d 774, which defined the standards demanded of a member of a zoning body, the General Assembly, in 1951, adopted what is now § 8-11 of the General Statutes." *Fletcher* v. *Planning & Zoning Commission,* 158 Conn. 497, 506, 264 A.2d 566. This section provides in pertinent part that "[n]o member of any zoning commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense."

The obvious purpose of this statute is to create public confidence in the administration of zoning. This court has had repeated occasion to reaffirm the principle, laid down in *Low* v. *Madison,* supra, that public policy requires that members of such public boards cannot be permitted to place themselves in a position in which personal interest may conflict with public duty.

On the facts found by the trial court, it is clear that Eno had no direct or indirect financial interest in the outcome of the application, and the plaintiffs do not make such a claim before this court. They

do urge, however, that Eno was disqualified because of the business and personal dealings he had with Fitzgerald and because he had a preconceived and firm opinion concerning the best use of the subject property.

"A personal interest is either an interest in the subject matter or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member of the zoning authority. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess." *Anderson* v. *Zoning Commission,* 157 Conn. 285, 290, 253 A.2d 16.

In the instant case the finding indicates that although Eno and Fitzgerald had known each other for many years, they did not meet socially and were not on a first-name basis with each other; that Fitzgerald did most of his banking with the Simsbury Bank and Trust Company, of which Eno was an officer, but seldom went to the bank and had not seen Eno there or talked with him on the telephone; and that, if the change of zone were granted, neither Fitzgerald nor Eno thought that the Simsbury Bank and Trust Company would be involved in financing the proposed shopping center. From these facts, the trial court could reasonably conclude that Eno did not have such a relationship with the applicant Fitzgerald that he should have disqualified himself.

"Local governments would . . . be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official. If this were so, it would not only discourage but might even prevent capable

men and women from serving as members of the various zoning authorities. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism. They must, however, also be mindful that to abrogate a municipal action on the basis that some remote and nebulous interest may be present would be to deprive unjustifiably a municipality, in many important instances, of the services of its duly elected or appointed officials." *Anderson* v. *Zoning Commission,* supra, 291.

The trial court found that although as early as 1963 Eno had been of the opinion that the land in question was suitable for a shopping center, he had not made up his mind on the application before the hearing. The plaintiffs urge that our holding in *Lage* v. *Zoning Board of Appeals,* 148 Conn. 597, 604, 172 A.2d 911, is controlling in the instant case and requires the conclusion that Eno was disqualified. Unlike the factual situation in *Lage,* the plaintiffs in the instant case had every opportunity to present their evidence in the trial court, and there was no evidence that Eno had ever taken a definite and unalterable position with reference to the proposed zone change. The law does not require that members of zoning commissions must have no opinion concerning the proper development of their communities. It would be strange, indeed, if this were true. The decisive question in the instant case is whether Eno had actually made up his mind, in advance of the public hearing, that he was going to approve the proposed change of zone regardless of any changes or arguments in opposition which might be urged at the hearing. To discover the truth of the matter, his state of mind as a member of the com-

mission had to be determined as a question of fact, and the burden of proving the illegality of his action was on the plaintiffs. "The question is whether the court's refusal so to find [that his mind was made up] was erroneous as a matter of law, or, conversely stated, whether the court was compelled as a matter of law so to find on the evidence before it . . . ." *Pecora* v. *Zoning Commission*, 145 Conn. 435, 444, 144 A.2d 48. In the instant case the court concluded, after hearing evidence and assessing the credibility of witnesses, that "Eno had not made up his mind on the defendant Fitzgerald's application before the hearing," and it has not been demonstrated that this conclusion was erroneous as a matter of law.

The plaintiffs assign error in the conclusion of the trial court that Pivko, who sat on the defendant commission as an alternate in the instant case, was not disqualified. The alleged disqualification was based on a claim that Pivko never took the oath of office as an alternate member of the commission. The trial court found that Pivko had been asked to serve as an alternate by the secretary of the commission and acted in that capacity some fifteen or twenty times commencing in 1962 or 1963; that he had heard the Fitzgerald application and acted upon it; and that he was never sworn in as an alternate, either before or on the night the Fitzgerald application was heard. The court, in its memorandum of decision, determined that Pivko was a de facto officer the validity of whose actions would not be open to challenge in this fashion.

Many years ago this court adopted a broad rule detailing the circumstances under which an officer not legally qualified will be found to be an officer de facto: "First, without a known appointment or election, but under such circumstances of reputation or

acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be. Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like. Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public. Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such." *State* v. *Carroll,* 38 Conn. 449, 471.

The plaintiffs have not attempted to demonstrate that the method of appointment was illegal, and the record indicates only that no oath was taken. In the absence of evidence to the contrary, we may assume that the commission was properly constituted. *Hebb* v. *Zoning Board of Appeals,* 150 Conn. 539, 545, 192 A.2d 206. Pivko was serving "under color of a known and valid appointment . . . , but where . . . [he] had failed to conform to some precedent requirement or condition, as to take an oath." *State* v. *Carroll,* supra. Pivko was therefore an officer de facto. *Berger* v. *Guilford,* 136 Conn. 71, 82, 68 A.2d 371; *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 540, 89 A. 172; *State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554, 557, 78 A. 442; *Chester* v. *Leonard,* 68 Conn. 495, 504, 37 A. 397.

"The general rule is that the acts of a de facto officer are valid as to third persons and the public

until his title to office is adjudged insufficient, and such officer's authority may not be collaterally attacked or inquired into by third persons affected. The practical effect of the rule is that there is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned. The principle is placed on the high ground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice." 43 Am. Jur. 241, Public Officers, § 495.

The court's conclusion that Pivko was not disqualified to sit as an alternate member of the commission cannot be disturbed.

The plaintiffs claim in their briefs that Robert L. Nelson, who sat as a member of the commission, had not been legally appointed or sworn in. The finding reveals that no such claim of law was made in the trial court, and since the claimed error in the refusal of the court to find the subordinate facts relating to Nelson was abandoned, there is no basis for the plaintiffs' claim.

The plaintiffs assign error in the overruling by the trial court of their claim of law that the change of zone was arbitrary, illegal and in abuse of the zoning commission's discretion in that it violated the comprehensive plan and the plan of development for Simsbury. The plaintiffs urge that the most recent plan of development adopted by the town plan commission in 1966 does not provide for a shopping center at the junction of Bushy Hill Road and Stratton Brook Road, and claim that since this plan was a thorough study of the town's future development it constituted the comprehensive plan and could not be summarily rejected. This is a misconception of the nature of the plan of develop-

ment adopted by the town plan commission. "[A] plan of development is properly called a 'master plan' and . . . is the planning commission's recommendations of the most desirable use of land." *Mott's Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 538, 209 A.2d 179. "A master plan is controlling only as to municipal improvements, appealable under § 8-30, and as to the regulation of subdivisions of land, appealable under § 8-28. See *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822; 'The Connecticut Law of Zoning (Part A),' 41 Conn. B.J. 262, 267. The master plan does not control the zoning board in its enactment of zoning regulations but rather is merely advisory. Ibid." *Sheridan* v. *Planning Board,* 159 Conn. 1, 9, 266 A.2d 396.

The defendant commission was acting under the general enabling act. General Statutes, c. 124. A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential uses of the properties. It may be found in the scheme of the zoning regulations themselves. *Stiles* v. *Town Council,* 159 Conn. 212, 227, 268 A.2d 395; *Clark* v. *Town Council,* 145 Conn. 476, 486, 144 A.2d 327. The Simsbury zoning map indicates that a large tract of land located directly northeast of the junction of Stratton Brook Road and Bushy Hill Road is zoned I-2 (general industrial). The regulations themselves provide for the establishment of designed business development zones under very detailed regulations, although the zoning map indicates that no such zone has yet been established. Such a zone could be established in any district. The designed business development

zone created is in the nature of a special use district. *Clark* v. *Town Council,* supra. In approving the change of zone, the commission concluded that the population of the town was rapidly expanding; that existing facilities were congested and inadequate and could not be expanded; that the proposed location was readily accessible from all areas; that few properties would be affected, and these could be protected with an adequate buffer zone; and that the proposed location was near an industrial zone.

"The circumstances and conditions in matters of zone changes and regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. The facts before the commission were such as to support, fairly and reasonably, its conclusion that the change of zone applied for would permit the use of the land for a purpose which was suitable and appropriate and would create a new zone which was in keeping with the orderly development of the comprehensive plan for the zoning of the entire town.

The conclusion of the trial court that the change of zone did not violate the comprehensive plan of the town of Simsbury was correct.

The claim of the plaintiffs that the change in zone was inconsistent with the public welfare and did not protect the character and maintain the stability of residential, business and manufacturing areas within the town is without merit. The record indicates that the zoning commission heard evidence that the change would benefit the town; that there was a

chicken farm located on the property; that land zoned for industry was located across the street; that the proposed plan would not detract from the value of property in the area; that the proposed location was safe, considering traffic, and the shopping center would not pose a traffic hazard; that test borings indicated that the soil was suitable for subsurface disposal of wastes; and that only 7.49 percent of the land would be covered by buildings, thus providing a better opportunity for a buffer area. The commission also pointed out that, pursuant to article 10 of the zoning regulations, site plan approval by the zoning commission and review by the town plan commission would be required before a building permit was granted.

On this record we cannot say that the trial court erred in sustaining the action of the defendant commission, since " 'courts do not and should not substitute their judgment for that of the local authority.' *Hall* v. *Planning & Zoning Board,* 153 Conn. 574, 577, 219 A.2d 445." *Stiles* v. *Town Council,* supra, 218.

The plaintiffs also urge that the action of the commission constituted "spot zoning" and that the trial court erred in sustaining the action of the commission. " 'Spot zoning has been defined as "a provision in a zoning plan or a modification in such a plan, which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole." Maltbie, "The Legal Background of Zoning," 22 Conn. B.J., pp. 2, 5.' *Kimball* v. *Court of Common Council* . . . [148 Conn. 97, 102, 167 A.2d 706]. Spot zoning is an 'attempt to wrench a single small lot from its environment and give it a new rating that disturbs the

tenor of the neighborhood.' *Linden Methodist Episcopal Church* v. *Linden,* 113 N.J.L. 188, 191, 173 A. 593 (cited with approval in *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 63, 89 A.2d 746). Two elements must coexist in order to constitute spot zoning. First, there must be a change in zone applicable only to a small area. Second, this change must be out of harmony with the comprehensive plan for the good of the community as a whole. *Guerriero* v. *Galasso,* 144 Conn. 600, 607, 136 A.2d 497." *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 12, 202 A.2d 241.

Since the change of zone, as we have already indicated, is in accordance with the comprehensive plan, the claim that it constitutes spot zoning vanishes. *Sheridan* v. *Planning Board,* supra, 18; *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* supra.

The remaining assignments of error were not pursued in the plaintiffs' brief and are, therefore, treated as abandoned. *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619.

There is no error.

In this opinion the other judges concurred.