RICHARD WOODBURN *v.* CONSERVATION COMMISSION OF THE TOWN OF REDDING ET AL.
(12848)

FOTI, SCHALLER and HENNESSY, Js.

Argued December 8, 1994—decision released March 7, 1995

*Nancy Burton,* for the appellant (plaintiff).

*Edwin C. Pearson,* for the appellee (named defendant).

HENNESSY, J. The plaintiff, Richard Woodburn, an environmental intervenor,[1] appeals from the judgment of the trial court upholding a decision of the defendant Redding conservation commission (commission) approving an application submitted by the defend-

---

[1] General Statutes § 22a-19 (a) provides in relevant part: "In any administrative, licensing or other proceeding, and in any judicial review thereof . . . any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding . . . for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

ants Gerald Casiello and Margaret Casiello for a permit to construct a small pond on their property. The plaintiff claims that the trial court improperly found that (1) the commission's decision was supported by substantial evidence, (2) the commission had complied with the feasible and prudent alternative requirement of General Statutes § 22a-41 (b),[2] (3) there was no conflict of interest on the part of Commissioner Robert Campbell, (4) the commission's legal notice of the hearing satisfied the statutory requirements, and (5) the information submitted by the applicants complied with the commission's regulations. We affirm the judgment of the trial court.[3]

The trial court found the following facts. Gerald Casiello and Margaret Casiello applied to the commission for a permit to construct a pond on their property located at 152 Gallows Hill Road. The location of the proposed pond was in wetlands and the application further sought that the fill from the excavation of the pond be spread over almost 1000 square yards of wetlands adjacent to the proposed pond. The spreading of the fill was planned to cover a growth of phragmites, an invasive wetlands grass. The commission held an initial meeting on this application on April 7, 1992, and a site inspection was planned. On April 22, 1992, at a second meeting con-

---

[2] General Statutes § 22a-41 (b) provides: "In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record."

[3] The plaintiff also claims that the trial court improperly denied his applications for an ex parte temporary restraining order and for a temporary injunction. Our affirmance of the final judgment of the trial court makes it unnecessary to review this claimed error, as there is no practical relief that we could afford the plaintiff. *Cioffoletti* v. *Planning & Zoning Commission*, 34 Conn. App. 685, 690, 642 A.2d 1220, cert. denied, 230 Conn. 916, 645 A.2d 1018 (1994).

sidering the application, it was decided that the application proposed a significant activity and that a public hearing should be held. Notice of the public hearing was published in the Redding Pilot, a local newspaper, on May 21 and 28, 1992.

The public hearing in connection with the application commenced on June 2, 1992, was continued four times and concluded on August 4, 1992. During the hearing, the applicants testified and submitted reports by experts, experts retained by the commission submitted reports, interested persons were allowed to comment, and the commission conducted two site inspections. On August 18, 1992, the commission met to discuss the application, and on September 1, 1992, the commission voted on the application. The Casiellos' application was approved by the vote of three commissioners, with two commissioners voting in opposition.

Notice of the approval of the Casiellos' application was published in the Redding Pilot on September 10, 1992. The plaintiff filed an appeal from this approval on September 30, 1992, in the Superior Court for the judicial district of Danbury. On November 16, 1992, the plaintiff applied for an ex parte temporary restraining order and a temporary injunction, seeking to delay the construction of the Casiellos' pond and the distribution of the fill. The temporary restraining order was denied, and, following a hearing, the application for a temporary injunction was also denied.

On April 29, 1993, the trial court held a hearing on the plaintiff's appeal. On August 31, 1993, the trial court issued a memorandum of decision dismissing the plaintiff's appeal. It is from this judgment that the plaintiff appeals.

I

The plaintiff first claims that the trial court improperly found that the commission's decision approving the

applicants' proposal was supported by substantial evidence. He argues that the evidence does not support the conclusion that the excavation of the pond was consistent with the purposes of the wetlands act, and, even if it did support that conclusion, there was not substantial evidence to support the conclusion that the Casiellos be permitted to spread the fill from the excavation over 1000 square yards of wetlands.

The purpose of the Inland Wetlands and Watercourses Act (act)[4] is to provide an orderly process in which the rights of landowners to use or develop their land can be balanced with the need to protect the invaluable public resource of wetlands. See General Statutes § 22a-36. The statute, and the regulations adopted to implement it, provide for an application and hearing process through which these competing interests are balanced. See General Statutes § 22a-42a.

Section 22a-42 (a) expressly encourages localities to regulate wetlands within their jurisdiction.[5] In interpreting the wetlands act, our Supreme Court has con-

[4] The Inland Wetlands and Watercourses Act (act); found at General Statutes § 22a-36 et seq.; instructs municipalities to adopt regulations in conformity with the act in order to effectuate the purposes of the act. General Statutes § 22a-42 (a). The town of Redding has done so and the Casiellos' application was processed in conformity with these local regulations, not directly under the act. These regulations, however, are essentially a local implementation of the act; local regulations cannot impose a lesser responsibility on a locality than the act itself imposes on the commissioner of environmental protection, although local regulations may impose requirements which are more stringent if they are consistent with the act. T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 267–68. In neither the trial court nor this court did the plaintiff argue that the Redding inland wetlands and watercourses regulations imposed any different requirement or required any result different from the act. Thus, we will review the plaintiff's claims as if they arise directly under the act.

[5] General Statutes § 22a-42 (a) provides: "To carry out and effectuate the purposes and policies of sections 22a-36 to 22a-45, inclusive, it is hereby declared to be the public policy of the state to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities and districts."

cluded that a local agency "empowered to implement the wetlands act must . . . be vested with a certain amount of discretion in order to carry out its function." *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 722, 563 A.2d 1339 (1989). In deference to this discretion, review of wetlands commission decisions is not de novo. Instead, the reviewing court must sustain the agency's determination if "an examination of the record discloses evidence that supports any one of the reasons given"; *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 539–40, 525 A.2d 940 (1987); or if the reviewing court's search of the record of the hearings before the agency reveals any adequate basis for its decision. *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 588–89, 628 A.2d 1286 (1993), citing *Gagnon* v. *Inland Wetlands & Watercourses Commission*, 213 Conn. 604, 611, 569 A.2d 1094 (1990). The evidence to support any such reason, however, must be substantial. *Huck* v. *Inland Wetlands & Watercourses Agency*, supra, 540. " 'This so-called substantial evidence rule is similar to the "sufficiency of the evidence" standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords "a substantial basis of fact from which the fact in issue can be reasonably inferred." ' " Id., 541.

In this case, the trial court thoroughly examined the record and expressly found that there was substantial evidence from which the commission could have concluded that the proposed construction, including the spreading of fill to cover the phragmite growth, would have a positive impact on the affected wetlands area. The trial court emphasized the report of the applicants' expert, Frank E. Indorf, Jr., a soil and environmental consultant. His report states: "The construction of a pond on this site will increase the overall potential for diversity within a wetland system with expanded hab-

itat for fauna and aquatic plants. The pond will improve the overall wildlife habitat of the present wetland area and will introduce a diversification of wetland wildlife into the area." Indorf's report also indicated that the conversion of this area from one type of wetland to another type of wetland by the spreading of fill should not be considered an irreversible or irretrievable commitment of a resource.

The plaintiff directs us to other evidence that contradicts Indorf's conclusions and could have led the commission to deny the Casiellos' application. This contradictory evidence was considered by the trial court, and does not undermine a finding that substantial evidence supported the commission's action. " 'In determining whether an administrative finding is supported by "substantial evidence," a court must defer to the agency's assessment of the credibility of the witnesses . . . even an expert, in whole or in part.' " *Gardiner* v. *Conservation Commission*, 222 Conn. 98, 108, 608 A.2d 672 (1992), quoting *Briggs* v. *State Employees Retirement Commission*, 210 Conn. 214, 217, 554 A.2d 229 (1989). " '[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . .' (Citations omitted; internal quotation marks omitted.) *Huck* v. *Inland Wetlands & Watercourses Agency*, [supra, 203 Conn. 541–42]." *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 588. We conclude that the trial court properly deferred to the discretion of the commission, and we will not disturb the trial court's finding that the action of the commission was supported by substantial evidence.

## II

The plaintiff also claims that the trial court improperly found that the commission had reviewed alternatives to the applicants' proposed action and had found no alternative to be feasible and prudent. The plaintiff suggests that the failure of the commission to identify specific alternatives it had considered, or to state expressly the reasons why each alternative was found not to be feasible and prudent, compels a finding that the commission failed to discharge the requirements of General Statutes § 22a-41 (b). We disagree.

Section 22a-41 (b) requires that "[i]n the case of an application which received a public hearing, a permit shall not be issued unless the [commission] finds that a feasible and prudent alternative does not exist. . . ." The statute further requires that the commission set forth, on the record, its finding in connection with the application, and the reason therefor. Although the statute may appear to require a more detailed exposition of the commission's finding and reasons than was set forth in this case, our Supreme Court has held that "the statute does not require an inland wetlands agency explicitly to specify the factors that it has utilized in its evaluation of an application." *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 598. "As long as a search of the record reveals the basis for the agency's decision consistent with the substantial evidence standard . . . the reviewing court must infer that the local wetlands agency made a finding that the applicant's alternative was the feasible and prudent alternative." Id., 595–96.

As indicated in part I, we are convinced that the trial court properly found that substantial evidence supported the commission's decision. The commission held hearings, conducted site visits of the subject property,

reviewed alternative proposals for the placement of the pond, and reviewed reports of experts. Those opposed to the project were given the opportunity to comment and suggest alternatives for the consideration of the commission. The plaintiff, for example, had the opportunity to propose the alternative of denying the permit outright. Furthermore, the hearing process involved various changes in and refinements of the plan as it was originally proposed. Such changes are a common result of a land use commission's deliberations; see *Kleinsmith* v. *Planning & Zoning Commission*, 157 Conn. 303, 311, 254 A.2d 486 (1968); and reflect the commission's awareness and consideration of alternatives to the applicants' proposal. "[T]he agency's decision to approve the permit constituted an implicit finding that no other feasible and prudent alternatives existed . . . ." *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 596. We conclude that the trial court properly rejected this claim of error.

## III

The plaintiff next claims that the participation of Campbell in the proceedings and decision on the Casiellos' application tainted the outcome. The plaintiff argues that the record reflects Campbell's prejudice against the plaintiff and his prejudgment of the application. The plaintiff points out that after Campbell announced that he might not be available for the final vote on the application, he requested permission to vote by proxy; the plaintiff believes this suggests Campbell had made a decision on the application prior to the final deliberations.[6] The plaintiff further directs our attention to transcripts of the commission's proceedings, which contain statements made by Campbell about the plaintiff and the plaintiff's attorney that can

---

[6] It should be noted that Campbell was present at the final vote, at which time he did in fact vote to approve the Casiellos' application.

fairly be described as pejorative.[7] We are not persuaded.

"The law does not require that members of [land use] commissions must have no opinion concerning the proper development of their communities." *Furtney v. Zoning Commission*, 159 Conn. 585, 594, 271 A.2d 319 (1970). "The evil to be avoided is the creation of a situation tending to weaken public confidence . . . in the exercise of zoning power." (Internal quotation marks omitted.) *Cioffoletti v. Planning & Zoning Commission*, 209 Conn. 544, 554, 552 A.2d 796 (1989).

Here, the plaintiff alleges prejudice and prejudgment on the part of Campbell, which required his disqualification from the consideration of the Casiellos' application. Our Supreme Court has held that disqualification is required in the face of such allegations if the commission members whose partiality is challenged "actually had made up their minds *prior to* the public hearing, regardless of any arguments that might have been advanced at the hearing." (Emphasis added.) Id., 555. The burden of proving a commissioner's partiality and prejudgment is on the plaintiff. *Furtney v. Zoning Commission*, supra, 159 Conn. 594–95.

The trial court found that there was no evidence in the record that Campbell had any financial interest in the outcome of the application or any disqualifying personal relationship with any opponent of the application. The trial court emphasized that the plaintiff had failed to show that Campbell had made a decision prior to the hearing that prevented his fair consideration of the evidence presented to the commission. We also note that

---

[7] In the course of discussing a news story which reported the initiation of legal action by the plaintiff in connection with the application of the Casiellos, Campbell, referring to the plaintiff, stated: "This guy's a pawn. He's a pawn in the hands of someone who capriciously abuses the rights of a free society, Burton." The plaintiff's attorney is Nancy Burton.

the trial court record does not reflect that the plaintiff ever requested that Campbell or any other person testify in order to develop this claim of partiality and predisposition. See *Cioffoletti* v. *Planning & Zoning Commission*, supra, 209 Conn. 555–56. Furthermore, the comments on which the plaintiff relies in attempting to establish bias "were all made during the hearings or in the discussion preceding the vote upon the application. They do not, therefore, indicate any predisposition that would have disqualified [Campbell] before the hearing." Id., 556.

We conclude that, on the basis of the evidence before it, the trial court properly found that the plaintiff had failed to demonstrate the kind of bias that would have required Campbell's disqualification from the commission's consideration of the Casiellos' application.

IV

The plaintiff further claims that the public notice provided by the commission of the pendency of the Casiellos' application was legally insufficient.[8] The plaintiff notes that the published notice contained only the information that the Casiellos intended to create a small pond, and not that they planned to spread the fill from the excavation over 1000 square yards of wetlands.[9] The plaintiff argues that the absence of this

---

[8] In his brief, the plaintiff also argues that the notice of the final action taken by the commission was legally insufficient. Our review of the record and the file indicates that this issue was never raised in or considered by the trial court, nor was it identified in the preliminary statement of issues at the outset of the appeal. Accordingly, we decline to review this claim. See *Saradjian* v. *Saradjian*, 25 Conn. App. 411, 419, 595 A.2d 890 (1991); *Yale Literary Magazine* v. *Yale University*, 4 Conn. App. 592, 597, 496 A.2d 201 (1985), aff'd, 202 Conn. 672, 522 A.2d 818 (1987).

[9] The notices published prior to the public hearing provided: "The Redding Conservation Commission will open a Public Hearing on June 2, 1992 at 8:00 p.m. in the Old Town House, Redding Center, to consider the following: Application 92-09 Peg & Gerry Casiello, 152 Gallows Hill Road. Construction of a small pond. Data on file at the Land Use Office, Old Town House."

information misled the public by not making it aware of the full impact the granting of the application could have on the involved wetlands. The plaintiff concludes that the notice was inadequate to allow those concerned about the proposal to make intelligent preparation for participation in the public hearing. We do not agree.

General Statutes § 22a-42a (c) requires public notice prior to a hearing on an application pursuant to the inland wetlands regulations.[10] "[T]he fundamental reason for the requirement of notice is to advise all affected parties of the opportunity to be heard and to be apprised of the relief sought." (Internal quotation marks omitted.) *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 47, 301 A.2d 244 (1972). "Compliance with statutorily prescribed notice requirements is a prerequisite to a valid action by a land use commission and failure to give proper notice constitutes a jurisdictional defect." *Peters* v. *Environmental Protection Board,* 25 Conn. App. 164, 168, 593 A.2d 975 (1991). Failure to provide prehearing notice prevents interested parties from becoming involved in the hearing process. Notice "is adequate if it fairly and sufficiently apprises those who may be affected of the nature and character of the action proposed, so as to make possible intelligent preparation for participation in the hearing." (Internal quotation marks omitted.) *Koepke* v. *Zoning Board of Appeals,* 25 Conn. App. 611, 617, 595 A.2d 935 (1991), rev'd, 223 Conn. 171, 610 A.2d 1301 (1992).

---

[10] General Statutes § 22a-42a (c) provides in relevant part: "No later than sixty-five days after the receipt of such application, the inland wetlands agency may hold a public hearing on such application. Notice of the hearing shall be published at least twice at intervals of not less than two days, the first not more than fifteen days and not fewer than ten days, and the last not less than two days before the date set for the hearing in a newspaper having a general circulation in each town where the affected wetland and watercourse, or any part thereof, is located. All applications and maps and documents relating thereto shall be open for public inspection. . . ."

The plaintiff does not claim a defect in the technical notice requirements, such as publication at certain times and in an appropriate newspaper. The plaintiff's claim is limited to the failure of the notice to inform the public of the proposal to spread the fill from the pond excavation over 1000 square yards of wetlands. We have previously stated that "the notice need not describe the proposed action with exactitude." *Cocivi* v. *Plan & Zoning Commission*, 20 Conn. App. 705, 708, 570 A.2d 226, cert. denied, 214 Conn. 808, 573 A.2d 319 (1990); see also *Kleinsmith* v. *Planning & Zoning Commission*, supra, 157 Conn. 311. Although the construction of a small pond as announced in the notice may not set forth all details of the planned action, anyone interested in determining the full impact of the construction of this pond on the wetlands would be alerted so that they could learn the specific details of the plan.

The notice provided in this case specifically stated that data regarding the application was on file at the land use office. The plans submitted with the application, available at the land use office, set forth the size of the pond, the location of the pond and the proposed use of the fill in the wetlands. These plans clearly present the details of the proposal in a way allowing interested persons meaningful participation in the public hearing process.

The trial court expressly found that the notice contained the names of the applicants, the exact location of the proposed activity, and the proper date and time of the public hearing. In light of the trial court's findings, and because the prehearing notice clearly indicated that data concerning the details of the application and approval were available at the land use office, we conclude that the trial court properly found that the published notice met the statutory requirements.

## V

The plaintiff's final claim is that the commission failed to require the Casiellos to submit information as set forth in the appendix to the town's inland wetland regulations. In his brief, the plaintiff concedes that the commission was not obligated to require the Casiellos to submit detailed information concerning all of the items in the appendix. The plaintiff claims only that the commission arbitrarily and capriciously failed to require the information that was submitted to be more professional in form. The plaintiff argues that the maps and diagrams submitted to the commission should have been marked with the seal of a professional engineer or attestation of a soil scientist, and should have been drawn to scale and located the areas of the proposed development with precision.

The trial court dismissed this claim of error by pointing out that the inland wetland commission's regulations allowed for, but did not mandate, the submission of the documentation listed in the appendix. It was within the discretionary power of the commission to proceed on the application with the supporting material as submitted. We will not reverse the trial court's finding that the information submitted to the commission provided a substantial basis to approve the Casiellos' application.

The judgment is affirmed.

In this opinion the other judges concurred.