[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, William H. Honan (Honan), appeals, pursuant to General Statutes § 8-8, from a decision of the defendant, the Redding Conservation Commission, which approved the application of defendant, Walter E. Whitton, to develop land situated at 135 Cross Highway, Redding, Connecticut. Also named as defendants are the proposed developer and successful applicant, Walter E. Whitton (Whitton), and the Commissioner of Environmental Protection.
Under a separate caption, Honan has also brought an action against the Redding Planning Commission (Planning Commission) and Walter E. Whitton, individually, alleging essentially the same underlying facts and seeking the same relief. On July 17, 1995, the court, Mihalakos, J., ordered the two actions be tried together on September 11, 1995.
On December 15, 1994, the Redding Conservation Commission (Conservation Commission) published notice of its decision approving Whitton's application for permission to subdivide the property in question. (Return of Record ["ROR"], Item 17: certificate of publication.) Pursuant to General Statutes § 8-8, Honan timely exercised his appeal rights by commencing this action by service of process on December 30, 1994. Honan alleges that the Conservation Commission's action in approving the subdivision plan was arbitrary, capricious, illegal and an abuse of its discretion.
On January 25, 1995, the Redding Planning Commission published notice of its decision approving Whitton's subdivision application, triggering the appeal period. (ROR, Item 1: certificate of publication.) Honan timely exercised his appeal rights pursuant to General Statutes § 8-8 by commencing the Planning Commission appeal on February 9, 1995.
Honan owns property located on Cross Highway which abuts the subject property. (Complaint, ¶ 7; Exhibit 1: August 30, 1994, deed to property.) Honan's property is located within 90 feet of the wetlands and watercourses involved in the Conservation Commission and Planning Commission's decisions. CT Page 3254 (Complaint, ¶ 7.) Thus, it is uncontested that Honan is statutorily aggrieved, pursuant to § 8-8(1), due to his status as an abutting landowner.
A. THE CONSERVATION COMMISSION ACTION (DOCKET NO. 31 94 84)
On September 23, 1994, Whitton filed a three-lot subdivision application with the Conservation Commission. (ROR, Item 1: September 15, 1994 application.) In support of his application, Whitton submitted: (1) an engineering and environmental report prepared by Land-Tech Consultants, Inc. (ROR, Item 33: September 19, 1994 report from Land-Tech); (2) a blueprint drawing entitled "Subdivision Map Prepared for Walter E. Whitton" (ROR, Item 35: map); and (3) a set of nine blueprint drawings entitled "Whitton Subdivision" (ROR, Item 36a-36i: drawings).
The Conservation Commission considered Whitton's proposed subdivision at five different meetings, the first of which was held on October 4, 1994. (ROR, Item 37: transcript of October 4, 1994 meeting.) At the October 4, 1994 meeting, representatives from Land-Tech Consultants made a presentation to the Conservation Commission on Whitton's behalf and answered questions posed by the Commission members. (ROR, Item 37: transcript of October 4, 1994 meeting, pp. 1-11.) On October 10, 1994, a site inspection was conducted by six members of the Conservation Commission as well as three persons on behalf of Whitton. (ROR, Item 24: minutes of site inspection; ROR, Item 38: transcript of October 18, 1994 meeting, p. 1.) Two reports were prepared for the Conservation Commission, one by the town engineer, Jim MacBroom, and one by the environmental consultant to the Commission, Barbara Obeda. (ROR, Item 3: October 10, 1994 report of Jim MacBroom; ROR, Item 4: October 18, 1994 report of Barbara Obeda.)
The application was discussed again at the Conservation Commission meeting on October 18, 1994, at which time Robert Jontos of Land-Tech discussed the environmental concerns contained in Barbara Obeda's report to the Commission. (ROR, Item 38: transcript of October 18, 1994 meeting, pp. 2-12.) On October 18, 1994, environmental consultant, Barbara Obeda, submitted a revised appendix to Whitton's application form. (ROR, Item 19: Appendix to Inland Wetlands and Watercourses Application Form.)
Whitton's application was discussed further at the November 1, 1994, meeting of the Conservation Commission. (ROR, Item 39: CT Page 3255 transcript of November 1, 1994 meeting.) At that meeting, a report was received from the Bridgeport Hydraulic Company (BHC) which expressed several concerns about the proposed subdivision. (ROR, Item 10: November 1, 1994 letter from William Lyon of BHC; ROR, Item 39: transcript of November 1, 1994 meeting.)
At the November 15, 1994 meeting of the Conservation Commission, Whitton's application was discussed a fourth time. (ROR, Item 40: transcript of November 15, 1994 meeting.) Robert Jontos of Land-Tech submitted some additional information to the Commission at that meeting. (ROR, Item 34: November 4, 1994 "Addendum to Hydrology and Hydraulic Calculations: Driveway Analysis.") In addition, a report was submitted by the Town Engineer at the meeting, commenting on the revised report from Land-Tech and recommending that the subdivision not be approved as presented. (ROR, Item 8: November 14, 1994 report from Jim MacBroom.)
Also, at the November 15, 1994 meeting, Nancy Burton, an abutting landowner and counsel for the plaintiff herein, asked that the Conservation Commission consider holding a public hearing on the proposed subdivision. (ROR, Item 40: transcript of November 15, 1994 meeting, pp. 6-8.) Commission members suggested that Burton submit a letter outlining her concerns about the subdivision. (ROR, Item 40: transcript of November 15, 1994 meeting, p. 8.)
On November 29, 1994, town engineer, Jim MacBroom, met with Land-Tech's Robert Jontos to discuss MacBroom's concerns about the project. MacBroom submitted a report summarizing their meeting on November 30, 1994, and advising that the changes they discussed would resolve MacBroom's concerns outlined in his November 14, 1994 report. (ROR, Item 9: November 30, 1994 report from Jim MacBroom.)
At the fifth and final meeting of the Conservation Commission on the Whitton subdivision, the Commission reviewed the letter from attorney Nancy Burton, and allowed her to address the Commission, even though the meeting was not public. (ROR, Item 14: December 6, 1994 letter from Nancy Burton; ROR, Item 41: transcript of December 6, 1994 meeting, pp. 1-9.) The Commission members also discussed with Robert Jontos the results of Jim MacBroom's November 30, 1994, report and discussed with Barbara Obeda how MacBroom's report affected her view of the proposed subdivision as an environmental consultant. (ROR, Item 41: CT Page 3256 transcript of December 6, 1994 meeting, pp. 3-4.) Finally, the Conservation Commission voted unanimously to approve the Whitton subdivision at the December 6, 1994 meeting. (ROR, Item 41: transcript of December 6, 1994 meeting, p. 10.)
On December 12, 1994, the Conservation Commission notified Whitton that the subdivision had been approved. (ROR, Item 16: December 12, 1994 letter from David Pattee.) The Conservation Commission's decision was published on December 15, 1994, in the Redding Pilot, and Honan commenced this appeal on December 30, 1994. (ROR, Item 15: December 9, 1994 letter from Redding Pilot; ROR, Item 17: certificate of publication.)
In this appeal, Honan argues that the Conservation Commission erred by: (1) failing to conduct a public hearing; (2) failing to consider alternatives which would reduce adverse impacts to the wetlands and watercourses; (3) determining that the Whitton application did not propose a significant activity; (4) failing to make an open space recommendation; and (5) approving an incomplete application. Honan also argues that the Conservation Commission demonstrated bias in favor of Whitton in approving the subdivision.
B. THE PLANNING COMMISSION ACTION (DOCKET NO. 32 00 78)
On September 23, 1994, Whitton filed an application for the same three-lot subdivision with the Redding Planning Commission (Planning Commission). (ROR, Item I-17: application.) The Planning Commission accepted Whitton's application at its September 27, 1994 meeting, and further considered the proposal at its October 11, 1994 meeting. (ROR, Item I-16: minutes of September 27, 1994 meeting; ROR, Item I-15: minutes of October 11, 1994 meeting.) Land-Tech's Robert Jontos and others appeared on behalf of Whitton at the meeting. (ROR, Item I-15: minutes of October 11, 1994 meeting.) A site walk was conducted on the subject property on October 30, 1994, by Robert Dean representing the Planning Commission, two representatives on behalf of Whitton, and Honan and Burton, abutting landowners. (ROR, Item I-14: minutes of site inspection.)
Two public meetings were held on the Whitton subdivision proposal, one on November 16, 1994, and the other on December 13, 1994. At the November 16, 1994 meeting, Robert Jontos spoke on behalf of Whitton, answering questions from the Commission members. (ROR, Item I-9: minutes of the November 16, 1994 public CT Page 3257 hearing.) Additionally, town engineer Jim MacBroom's November 14, 1994 report, and Bridgeport Hydraulic Company's report (undated) were read into the record. (ROR, Item I-9: minutes of the November 16, 1994 public hearing.) Finally, attorney Nancy Burton appeared at the meeting, expressing concerns about the subdivision. (ROR, Item I-9: minutes of November 16, 1994 public hearing.) The hearing was continued to December 13, 1994.
At the second public hearing, held on December 13, 1994, Jontos addressed the Planning Commission, explaining that the subdivision plans had been modified to comply with MacBroom's recommendations, which were discussed in a meeting between them on November 29, 1994. (ROR, Item I-8: minutes of December 13, 1994 public hearing, pp. 1-2.) Nancy Burton again addressed the Commission at the second public hearing. (ROR, Item I-8: minutes of December 13, 1994 public hearing.)
On January 10, 1995, the Planning Commission considered the proposed subdivision further, at which time a "[p]ossible conflict of interest by the deliberating commissioners was again examined and determined not to be a factor."[1] (ROR, Item I-7: minutes of January 10, 1995 meeting.) Finally, on January 24, 1995, the Planning Commission voted unanimously to approve the Whitton subdivision subject to twelve special conditions set forth in a report from the Bridgeport Hydraulic Company dated November 1, 1994. (ROR, Item 6: minutes of January 24, 1995 meeting; ROR, Item 3: November 1, 1994 report from BHC.)
On January 25, 1995, Whitton was notified of the Planning Commission's vote and the conditions imposed on the subdivision approval, and on January 26, 1995, the Planning Commission published its decision in the Redding Pilot. (ROR, Item 2: January 25, 1995 letter from Planning Commission; ROR, Item 1: certificate of publication.)
Honan timely commenced this appeal by service of a citation and complaint on February 9, 1995. In his appeal, Honan argues that the Planning Commission acted in an illegal, arbitrary and capricious manner and abused its discretion when it approved the Whitton subdivision because: (1) the property is "not suitable for building purposes"; (2) the Commission's approval of the subdivision violates § 4.1.9 of the Commission's regulations; (3) the subdivision application violated General Statutes § 8-25 because it did not propose to transfer all of the land within the subdivision to a family member; (4) the Commission's CT Page 3258 approval of the subdivision constitutes a failure to protect natural resources and inland wetlands from unnecessary adverse impacts; (5) the Commission was "improperly motivated by bias, prejudgment and prejudice"; and (6) the Commission relied on approval of the application by the Conservation Commission, which "itself is legally deficient and invalid." (Complaint, ¶ 5.)
At the outset, the court notes that the trial on these appeals was held on September 11 and 12, 1995, and post-trial briefs were filed by the parties on September 25 and 26, 1995. Thus, the 120-day period in which this court was required to render a decision, in accordance with General Statutes § 51-183, would have expired on January 24, 1996, 120 days from the filing of the last brief. Frank v. Streeter, 192 Conn. 601,472 A.2d 1281 (1984) (holding that the 120-day period does not begin to run until the filing of the last brief, even if that date is more than 120 days from the completion of the trial).
However, in reading through the files and researching the law, the court became aware that the Return of Record in the Planning Commission appeal was incomplete in that it lacked a copy of the Redding Subdivision Regulations. Since two of Honan's assignments of error involve alleged violations of the subdivision regulations, this court could not proceed without examining those documents. The court instructed the attorneys involved to provide certified copies of the subdivision regulations, and those documents were filed with the court on January 19 and 23, 1996. Thus, the court has 120 days from January 23, 1996, in which to render its decision, since the appeal could not be decided until the record was properly supplemented.
The standard of review of a decision of an administrative body is well-settled. "In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Smith v.Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1190, 127 L.Ed.2d 540
(1994). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." DeBeradinis v. ZoningCommission, 228 Conn. 187, 198, 635 A.2d 1220 (1994). CT Page 3259
"`The trial court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers.'" Frito-Lay,Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73,538 A.2d 1039 (1988), quoting Farrington v. Zoning Board of Appeals,177 Conn. 186, 190, 413 A.2d 817 (1979). Further, the burden of proof is on the plaintiff to demonstrate that the commission acted improperly. Spero v. Zoning Board of Appeals, 217 Conn. 435,440, 586 A.2d 590 (1991).
A. THE CONSERVATION COMMISSION ACTION (DOCKET NO. 31 94 84)
In the instant case, Honan has alleged that the Conservation Commission erred by: (1) failing to conduct a public hearing; (2) failing to consider alternatives which would reduce adverse impacts to the wetlands and watercourses; (3) determining that the Whitton application did not propose a significant activity; (4) failing to make an open space recommendation; and (5) approving an incomplete application. Honan also argues that the Conservation Commission "displayed bias and prejudice in favor of the applicant." (Plaintiff's post-trial brief, p. 1.)
1. FAILURE TO HOLD A PUBLIC HEARING
Honan's first argument is that the Conservation Commission erred by not holding a public hearing on the Whitton subdivision. Honan argues in his brief that the Conservation Commission is required by its own regulations to consider public comments in reaching its decision. Specifically, Honan relies on § 7.4 of the Redding Conservation Commission's regulations for inland wetlands and watercourses, which states, in relevant part: "In making a decision on an application, the Commission shall review . . . (b) public comments, evidence and testimony. . . ." (ROR, Item 30: Regulations of the Redding Conservation Commission, p. 17.)
Honan's position is that the use of the word "shall" in the regulations requires that the Commission hold a public hearing on any proposed subdivision and that its failure to do so in this case constituted error. The position of the Conservation Commission is that it is not required to hold a public hearing on every subdivision application; rather, the Commission must exercise its discretion in deciding whether a public hearing is appropriate, pursuant to §§ 5.1 and 5.2 of the Conservation CT Page 3260 Commission's regulations.[2]
Section 7.4 of the Conservation Commission's regulations does not, of itself, mandate a public hearing on every subdivision application. If such a construction were adopted, it would obviate the need for § 5.2, since the Commission would have no discretion as to whether or not to hold a public hearing. Thus, Honan's argument that the Commission erred by not holding a public hearing is rejected by this court. Moreover, concerning Honan's third assignment of error, ample evidence appears in the record to support the Commission's determination that no public hearing was necessary on this subdivision.
2. FAILURE TO CONSIDER ALTERNATIVES
Honan's second assignment of error is that the Conservation Commission failed to consider alternatives which would reduce adverse impacts to the wetlands and watercourses. Honan argues that General Statutes § 22a-41[3] and Conservation Commission Regulation § 7.2a require that the Commission consider alternatives to the proposed regulated activity. In his brief, Honan argues that the Commission erred because it "never considered the obvious alternative of moving the driveway . . . [on the proposed subdivision] away from the wetlands and watercourse and thereby avoid an unnecessary regulated activity." (Plaintiff's post-trial brief, p. 2.)
In reply, the Conservation Commission argues that General Statutes § 22a-41(b) applies only when there is a public hearing on an application, and that since the Commission in this case did not hold a public hearing, the requirement of § 22a-41(b) that "feasible and prudent alternatives" be considered is not applicable. The Commission further argues that its decision is in compliance with the Supreme Court's decision in Samperi v.Inland Wetlands Agency, 226 Conn. 579, 628 A.2d 1286 (1993), because there exists substantial evidence in the record to support its decision to approve the subdivision.
The Commission's position regarding the applicability of § 22a-41 is not entirely correct. While subsection (b) may, by its terms, be limited to circumstances in which a public hearing has been held, there is no such limitation on subsection (a). Nevertheless, under the standard set forth in Samperi,
supra, the Conservation Commission's decision must be upheld. CT Page 3261
After defining the terms feasible and prudent, the Samperi
court stated: "The plaintiffs and the cross[-]appellant argue, nonetheless, that the statutory mandates of . . . [ § 22a-41] require the agency to create a record concerning each and every separate incursion or regulated activity in a wetland and to make an express finding that no feasible and prudent alternative exists before it can issue a permit. . . . We agree with the plaintiffs and the cross[-]appellant that the statute does not permit an agency to grant a permit if the agency finds that a feasible and prudent alternative exists with regard to any of the incursions or regulated activities. We disagree, however, that the agency's decision-making process in the regard requires explicit consideration of each proposed alternative and an explicit finding that all other alternatives are not feasible and prudent." Samperi v. Inland Wetlands Agency, supra, 226 Conn. 589-90.
Using the deferential standard of review that is required in administrative agency appeals; DeBeradinis v. Zoning Commission,
supra, 228 Conn. 198; sufficient evidence appears in the record to support the implicit conclusion reached by the Conservation Commission that no feasible and prudent alternatives existed.
3. FAILING TO MAKE AN OPEN SPACE RECOMMENDATION
Honan also argues that the Conservation Commission erred by failing to make an open space recommendation to the Planning Commission. He asserts that such a recommendation is required, and that the Conservation Commission's determination that the Whitton subdivision was exempt from open space regulations pursuant to General Statutes § 8-25 was erroneous.
General Statutes § 8-25 provides, in relevant part: "The open space requirements of this section shall not apply if the transfer of all land in a subdivision of less than five parcels is to a parent, child, brother, sister, grandparent, grandchild, aunt, uncle or first cousin for no consideration. . . ."
The Conservation Commission determined that the Whitton subdivision was exempt from the open space requirement of General Statutes § 8-25, because Whitton was transferring the subdivided parcels to his sons. Honan does not dispute that the land sought to be subdivided was going to be transferred to Whitton's children. Rather, Honan's position is that since Whitton intended to retain a portion of the land that is to be subdivided, the transfer does not consist of "all land in the CT Page 3262 subdivision," as required by § 8-25. In its brief, the Commission did not address the appropriateness of its decision in the context of § 8-25.
Notably, Honan has not identified any case law supporting his contention that all the land in a subdivision must be conveyed in order for it to be exempt from the open space requirements of § 8-25. Nor has this court's research revealed any cases so holding. Therefore, the Conservation Commission's interpretation of § 8-25 to exempt Whitton from the open space requirements of the inland wetlands statutes was not, as a matter of law, erroneous.
If the court were to interpret § 8-25 to require that a landowner transfer every segment of land to a designated family member, no one could do what Whitton attempts to do here, i.e., transfer a portion of land to a family member while retaining the balance for himself. Nothing in the statute indicates that such transfers are prohibited, and no court has so held. Thus, the Conservation Commission's determination that Whitton was exempt from the open space requirement of § 8-25 was not erroneous.
4. APPROVING AN INCOMPLETE APPLICATION
Honan further argues that the Conservation Commission erred in approving the subdivision because Whitton's initial application was incomplete. The Commission's response is that while the application may have been incomplete initially, Environmental Consultant, Barbara Obeda, provided the Commission with an annotated "Appendix: Inland Wetlands and Watercourses Application Form" on two occasions. (ROR, Items 18, 19.)
After careful review of all the materials contained in the Return of Record, the court concludes that Whitton's application was not incomplete, and that the Commission acted properly in approving the subdivision.
5. BIAS
Honan's final basis for his argument that the Conservation Commission committed error is that the Commission was allegedly biased in favor of Whitton when it approved his proposed subdivision. In his post-trial brief, Honan argues that the Commission had "made up its mind to approve the application regardless of any changes or arguments in opposition, and CT Page 3263 therefore its action in approving the application was illegal." (Plaintiff's post-trial brief, p. 1.)
In sum, the sole basis for Honan's allegation of bias is that (1) the Commission did not hold a public hearing when abutting landowner and attorney Nancy Burton requested one; and (2) Conservation Commission chairman David Pattee threatened to have Burton removed from the meeting when she attempted to "correct alleged false information." (Plaintiff's post-trial brief, p. 2.)
The major weakness in this argument is that the meeting at which Burton attempted to address the Commission was not itself a public meeting. Although Burton requested that the Commission hold a public hearing, the December 6, 1994 meeting of the Commission was not open to the public. Thus, Burton was not entitled as a matter of right to address the Commission. Moreover, a careful review of the record suggests that Honan has failed to sustain his burden of proving bias as set forth inFurtney v. Zoning Commission, 159 Conn. 585, 271 A.2d 319 (1970).
In Furtney, the Supreme Court stated that the landowner who challenges the decision of a commission on the ground of prejudgment and bias bears the burden of demonstrating such bias.Furtney v. Zoning Commission, supra, 594-95. Moreover, the Appellate Court has held that for a plaintiff to prevail on a claim that commission members impermissibly prejudged a matter pending before them, the plaintiff must show that the members "actually had made up their minds prior to the public hearing, regardless of any arguments that might have been advanced at the hearing." (Emphasis in original.) Woodburn v. ConservationCommission, 37 Conn. App. 166, 175, 655 A.2d 764 (1995), quotingCioffoletti v. Planning Zoning Commission, 209 Conn. 544,552 A.2d 796 (1989). Honan has failed to sustain his burden of proving prejudgment and bias by any of the Commission members because neither of the grounds cited in Honan's post-trial brief show that the Commission improperly prejudged Whitton's application under the test set forth in Woodburn, supra.
In sum, Honan's appeal challenging the propriety of the Conservation Commission's action is without merit.
B. THE PLANNING COMMISSION ACTION (DOCKET NO. 32 00 78)
Honan argues that the Planning Commission erred in approving the Whitton subdivision because: (1) the property is "not CT Page 3264 suitable for building purposes"; (2) the Commission's approval of the subdivision violates § 4.1.9 of Redding's Subdivision Regulations; (3) the subdivision application violated General Statutes § 8-25 because it did not propose to transfer all of the land within the subdivision to a family member; (4) the Commission's approval of the subdivision constitutes a failure to protect natural resources and inland wetlands from unnecessary adverse impacts as required by § 4.3.1 of Redding's Subdivision Regulations; (5) the Commission was "improperly motivated by bias, prejudgment and prejudice"; and (6) the Commission relied on approval of the application by the Conservation Commission, which "itself is legally deficient and invalid."
Honan's claim that the subdivision was not exempt from the open space requirements of § 8-25, has been sufficiently addressed by this court. Moreover, Honan's claim that the Planning Commission erred by relying on the "invalid" approval of the Conservation Commission is without merit, since the validity of the Conservation Commission's decision has also been addressed by this court.
1. UNSUITABILITY FOR BUILDING PURPOSES
Turning then to Honan's claim that the Planning Commission erred in approving the Whitton subdivision because it was "not suitable for building purposes," this claim is unsupported by the record. Honan argues that town engineer Jim MacBroom's original report to the Planning Commission indicated that the land was unsuitable for development because of problems with surface and subsurface drainage conditions. (ROR, Item II-1: December 12, 1994 report from Land-Tech, pp. 6-8: November 14, 1994 memorandum from Jim MacBroom.) Honan points out that MacBroom recommended that the subdivision not be approved until further groundwater data could be obtained (ROR, Item II-1, p. 8.), and that since no such data was obtained, the subdivision was inappropriately approved.
In response, the Commission argues that there is no requirement that additional groundwater data be collected, even after the recommendation of an expert. The Commission also argues that MacBroom's meeting with Robert Jontos, a Land-Tech consultant, following his November 14, 1994 memorandum, resolved any concerns that MacBroom may have had about surface and subsurface groundwater, and that this is evidenced by MacBroom's CT Page 3265 later memorandum to the Commission. (ROR, Item II-1, p. 4: November 30, 1994 memorandum from Jim MacBroom.)
The Planning Commission's position on this issue is meritorious. While Honan correctly points out that MacBroom's initial recommendation was not to approve the subdivision, the record is clear that MacBroom reconsidered his recommendation following meetings and discussions about his concerns about the proposed subdivision. Further, there is nothing in the record which suggests that MacBroom's change of position was in any way improperly motivated. Thus, this claim of error is also without merit.
2. ALLEGED VIOLATION OF REGULATION § 4.1.9
Honan's next argument is that § 4.1.9 of the Redding Subdivision Regulations [Supplemental ROR, Item 1 (no page numbering)] requires that for a common driveway to be approved in a proposed subdivision, each lot must have certain specified frontage and meet three other conditions.[4] Honan argues that § 4.1.9 cannot be met because the proposed driveway sits on a regulated watercourse, and therefore is not a suitable place for a driveway.
Honan asserts that "the regulation is intended to protect wetlands and watercourses from future unnecessary impacts." (Plaintiff's brief, p. 5.) This is patently a misinterpretation of the law. While § 4.1.9 directs that the character of the land be maintained and that a common driveway not have any adverse impact on abutting property, that section clearly states that the purpose of the regulations governing common driveways is to ensure adequate access for emergency vehicles to all lots.
In addition, the Planning Commission points out in its brief that § 4.1.9 allows construction of a common driveway if by doing so it obviates the need for a separate subdivision road. In other words, "§ 4.1.9(b) praises the use of a common driveway if it precludes the need for a subdivision road and so contributes to the protection of the natural environment." (Commission's brief, p. 7.) Accordingly, Honan's claim of error on this ground is, again, without merit.
3. FAILURE TO PROTECT NATURAL RESOURCES ( § 4.3.1)
Honan's next claim of error is that the Planning Commission CT Page 3266 violated § 4.3.1 of the Redding Subdivision Regulations by approving the common driveway since it runs through a protected wetland and watercourse. This argument is essentially a repetition of the other arguments set forth above. Honan's position is that because the Planning Commission failed to require Whitton to move the proposed driveway, it has failed to protect the land from adverse environmental impacts.
Honan asserts: "It is not necessary that the driveway be located as proposed; the driveway could readily be relocated to avoid entirely such regulated activity. It need only be shifted to the north and reconfigured somewhat. . . . Similarly, the driveway serving proposed Lot 3 is unnecessarily lengthy; the unnecessary excess length constitute[s] an unnecessary disruption of the natural environment. . . . Although this point was elaborately made during the public hearing . . . the Commission gave no consideration to a reconfiguration of the proposed subdivision to avoid unnecessary disruption of the natural environment and unnecessary regulated activities." (Plaintiff's brief, pp. 7-8.)
The thrust of Honan's argument is that because the Planning Commission did not accept his counsel's suggestions at the public hearing that the proposed driveway be moved, the Planning Commission committed error. This is simply not the case. In the first place, the applicant is not required by the regulations to demonstrate that it is "necessary" for the driveway to be located in a certain spot.
Section 4.3.1 of the Redding Subdivision Regulations provides, in full: "Safe and convenient access to every building site, with minimal disruption of the natural environment, shall be required in all plans." (Supplemental ROR, Item 1.) There is no allegation that there was unsafe or inconvenient access to the building site; Honan simply asserts that there is disruption of the natural environment. Moreover, as the Planning Commission points out in its brief, Whitton was in fact required to move the driveway to lot 3 to the north to minimize environmental impact, a deviation from his original proposal. (ROR, Item 6: minutes of January 24, 1995 meeting; ROR, Item 3: November 1, 1994 report from BHC.) Finally, the proposed driveway to lot 2 does not run through a wetland, but merely comes within 50 feet of the wetland, for which Whitton received a license from the Conservation Commission. CT Page 3267
In short, Honan's argument that the Planning Commission failed to protect the natural environment by approving the common driveway is unsupported by the record. The record manifestly supports the decision of the Planning Commission, and this court cannot disturb that finding. Frito-Lay, Inc. v. Planning ZoningCommission, supra, 206 Conn. 572-73.
4. BIAS OF THE PLANNING COMMISSION
The final ground on which Honan asserts that the Planning Commission erred is that the Commission was "driven by bias and prejudgment." (Plaintiff's brief, p. 10.) In his brief, Honan argues that at the October 11, 1994, meeting, one Commission member referred to "neighbors who might participate in the review process" as "witches and hobgoblins." (Plaintiff's Brief, p. 11.) Honan apparently believes that this remark was intended to refer to his attorney and abutting landowner Nancy Burton. In fact, the transcript of the October 11, 1994 meeting reveals the following dialogue:
 "R. DEAN: Do you anticipate on the site walk that a nearby neighbor might be interested in attending?
 D. TAYLOR: We, as always, notice our site walks. If anybody wishes to appear[,] as has happened on occasion and has not happened on other occasions — we never know who will appear for a site walk. Being close to Halloween we may have witches and hobgoblins, who can tell. Children bobbing for apples or neighbors. I was attempting to be funny, Warren."
(ROR, Item III-5: Transcript of October 11, 1994 meeting, p. 7.)
Read in context, and especially considering Taylor's final comment — "I was attempting to be funny, Warren" — the remark Honan relies on as demonstrating bias by the Commission is rather innocuous, at best.
Honan's other allegations regarding bias and prejudgment by Commission members in favor of the Whitton are totally unfounded. At the hearing on this appeal, Honan argued that Commission members were biased against him because his attorney and abutting landowner Nancy Burton was engaged in a freedom of information appeal against Commission member Diane Taylor. (Transcript of CT Page 3268 Record, pp. 34-35.) Yet other than the fact that there happened to be a freedom of information appeal in which Commission member Taylor and attorney Burton participated, Honan could not point to any facts or circumstances surrounding that appeal demonstrating that any bias existed. The mere fact that Taylor and Burton were adversaries in another matter does not, ipso facto, lead to the conclusion that one participant is biased against the other.
In short, Honan has simply not pointed to any facts or statements which demonstrate any bias by Commission members or shows that the members engaged in impermissible prejudgment of Whitton's application. Thus, Honan has failed to sustain his burden of proving bias since he has not shown that Commission members "actually had made up their minds prior to the public hearing, regardless of any arguments that might have been advanced at the hearing." (Emphasis in original.) Woodburn v.Conservation Commission, supra, 37 Conn. App. 175, quotingCioffoletti v. Planning Zoning Commission, 209 Conn. 544,552 A.2d 796 (1989).
Honan's appeal, challenging the propriety of the Planning Commission's action, is without merit. For the reasons given, both appeals are dismissed.
MIHALAKOS, J.