[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This appeal involves the approval by the defendant, Environmental Commission of the Town of New Canaan ("Commission") of an application to conduct a regulated activity on approximately 41 acres of land located in New Canaan. The application was submitted by contract purchasers Lucchesi and Watson, (partners in "Oenoke Ridge Partners"), the corporate property owner, Bridgeport Hydraulic Company ("BHC"), and the individual property owners, Brian Skinner, and Roman and Margaret Lomnckyj. The applicants were seeking to develop seven CT Page 1796 residential lots on the subject property. A revised Application reduced the number of lots to six. The Commission approved six lots. The approved lots comply with the four-acre zoning regulation and range in size from four acres to in excess of seven acres.
Five sessions of public hearings were held between August 15, 1996, and November 4, 1996. The application was approved with conditions at the Commission's meeting on January 9, 1997. The plaintiff's, landowners abutting the easterly portion of the subject property, appealed. Lucchesi, Watson, Oenoke Ridge Partners and BHC have intervened as defendants.
The Commissioner of Environmental Protection ("Commissioner") did not participate in the proceedings before the Commission, but received notice of the appeal pursuant to General Statutes § 22a-43(a). The Commissioner filed a brief and argued before this court in support of his position that the defendant Commission's actions were not in conformity with statutory requirements. The Commissioner takes the position that the plaintiffs' appeal should be sustained and the matter remanded to the Commission for new deliberations on the application.
Specifically, the Commissioner argued that the Commission's approval of the application did not conform with General Statutes § 22a-41(b)(1).[1] The Commission's written summary of its action on the application is contained in the minutes from the January 9, 1997 meeting. The minutes provide as follows: "1. None of the regulated activities of the applicant's property should have a significant adverse impact on the wetlands. 2. The applicant's proposal to develop the property is considered a prudent and feasible use of the land."
The Commissioner argued that the Commission failed to follow the statutory requirements, which were that the Commission must find that a feasible and prudent alternative does not exist. and that the "finding and the reasons therefore shall be stated on the record in writing." (Emphasis added.) General Statutes § 22a-41(b)(1).
General Statutes § 22a-41(b) was amended by Public Acts 1996, No. 96-157. The amendment added the requirements that the finding must be made before a permit will be issued, specifically that a feasible and prudent alternative does not exist, must be made "on the basis of the record," and such finding and the CT Page 1797 reasons therefore shall be stated on the record, "in writing."[2] Additionally, P.A. 96-157 added subsection (b)(2) to § 22a-41.[3]
The Commissioner asserted that this amendment legislatively overruled the Supreme Court's decision in Samperi v. InlandWetlands Agency, 226 Conn. 579, 628 A.2d 1286 (1993). In Samperi, the court considered the requirements of General Statutes § 22a-41(b) as it then existed, and determined that the agency's decision to approve a permit after conducting a thorough hearing and deliberations, constituted an implicit finding that there were no other feasible and prudent alternatives to the approved proposal. Samperi v. Inland Wetlands Agency, supra,226 Conn. 593. The court stated that while "the agency may manifest its finding explicitly, in those cases in which its finding is implicit in its decision, the reviewing court has the responsibility to search the record for substantial evidence in support of the agency's action." Id.
The Commissioner argued that on appeal, the court no longer can infer the finding that no feasible or prudent alternative exists. He argued that General Statutes § 22a-41(b), as amended by P.A. 96-157, no longer allows for an "implicit" finding, but instead requires a remand when the agency has not made an explicit finding, i.e., has not stated its finding and the reasons therefore on the record "in writing."
The court has examined the changes made by P.A. 96-157 and disagrees with the Commissioner's position. Significantly, a review of the legislative history of P.A. 96-157 reveals no discussion on the changes to § 22a-41(b)(1). While the court notes that the legislature added the words "in writing" to § 22a-41(b)(1), the court finds the requirement that, "[t]he finding and the reasons therefore shall be stated on the record in writing," to be directory only.
"In order to determine whether a statute's provisions are mandatory we have traditionally looked beyond the use of the word `shall' and examined the statute's essential purpose . . . The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is CT Page 1798 designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words . . . A statutory provision of this type directs what is to be done but does not invalidate any action taken for failure to comply . . . Furthermore, if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions, the statute should be con strued as directory." (Citations omitted; internal quotation marks omitted.) State v. Trahan, 45 Conn. App. 722, 730-31,697 A.2d 1153, cert. denied, 243 Conn. 924, 701 A.2d 660 (1997): see also,Caron v. Inland Wetlands Watercourses Commission,222 Conn. 269, 273, 610 A.2d 584 (1992).
In the present case, the essence of the thing to be accomplished is that there be a foundation in the record upon which the agency could make the requisite determination that a feasible and prudent alternative does not exist, and that that foundation be discernible. If the agency specifically stated its finding and reasons on the record in writing, it would make it clearer whether the agency properly considered and determined that a feasible and prudent alternative does not exist. The writing, however, is not the essence of the thing to be accomplished, but rather serves to crystallize the agency's decision. Furthermore, there is no language in the statute invalidating the agency's actions for noncompliance with the writing requirement.
The court finds that the language in General Statutes § 22a-41(b)(1), "[t]he finding and the reasons therefore shall be stated on the record in writing," is directory only and failure to comply does not mandate that the court sustain the appeal and remand to the agency for new deliberations. The court, therefore, will address the merits of the appeal.
The Commissioner accepted the Applicant's Application at its June 17, 1996 regular meeting, over the strenuous objections of plaintiffs' counsel. Counsel argued that the Application as submitted did not satisfy the Commissioner's regulations and was incomplete. An Inland Wetlands agency has discretion to decide whether an application is sufficiently complete with the material initially submitted to proceed with the application. Woodburn v.Conservation Commission, 37 Conn. App. 166, 179. The court finds that the application was complete prior to the time of the CT Page 1799 Commission's decision.
In a Memorandum of Decision, dated September 22, 1997 Karazin, J. wrote: "3. The plaintiff may raise at the time of trial the issue of (1) ex parte communications as they involve members Englund and Lee after the close of the public session with the applicants and/or their agents and (2) predetermination of Commission members Englund and Lee as it relates to prejudging the outcome of the application."
This court heard testimony from Mr. John Black Lee, the secretary for the Commission. Mr. Lee in preparation for the meeting to vote on the application called the applicant's agent to clarify which of the many maps submitted was the final map. In light of the volume of data submitted, the phone call was not an improper ex parte communication. Also, after hearing their testimony, the court finds no evidence that Commission Members Lee and Englund in any way predetermined their decision on this application.
The plaintiff's claim the Commission's regulations are illegal because they were not properly adopted in 1974. The court finds that the Commission is the Town's Inland/Wetland and Watercourse Agency. The regulations are in place (see Exhibit 136) for regulated activity permits in Inland/Wetland and Watercourse as required by § 22a-42a of the General Statutes.
The plaintiff's further claim that the Commission denied plaintiff's due process of law in violation of the Constitution of the State of Connecticut and the Constitution of the United States. This point is addressed in a recent Supreme Court decision. "Although no constitutional due process right exists in this case, we have recognized a common-law right to fundamental fairness in administrative hearings. The only requirement [in administrative proceedings] is the conduct of the hearing shall not violate the fundamentals of material justice." Grimes v.Conservation Commission, 243 Conn. 266, 273.
This application was heard by the Commission on five evening meetings consuming four to five hours on each evening. A review of the voluminous record leads this court to conclude that the plaintiffs were treated fairly and given every reasonable opportunity to present their case.
The plaintiffs' claim that they were denied due process in CT Page 1800 that the Commission should have assisted plaintiffs and their experts in obtaining limited access to the property is without merit. The property owner (BHC) exercised its rights in denying access to its property.
Of the 41 acres, 8.9 acres (or 22%), were identified as wetlands. The record shows that alternatives were presented and discussed.[4] The project involved four wetland crossings. The wetland disturbance is very minimal.
The only means of access to the 41 acres was over the 50-foot access strip from Michigan Road. There are no alternatives to wetland crossing No. 1 which is a small area within the access way. The most significant wetland crossing is crossing No. 2. Three alternatives were considered to crossing No. 2. Wetland crossings No. 3 and No. 4 were clearly minimal wetland crossings.
This court reviewed four of the five voluminous transcripts of the public hearings. The initial hearing was not transcribed due to a faulty tape.
The record of the testimony of the Applicant's expert witnesses could lead one to conclude that the six-lot proposed subdivision will not have an adverse impact on the wetlands because of the mitigating measures proposed by the applicants.
The plaintiff's expert witnesses offered data to support a one to four lot subdivision. Every possible alternative was presented to the Commission.
The court finds that the record before the Commission supports the Commission's conclusion that the Application will not cause unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the State including trees and wildlife. The findings and conditions set forth in the Commission's January 9, 1997 decision are supported by the evidence contained in the record. Also, the Applicant reduced the number of lots and shortened the road from 2,100 feet to 1,472 feet.
While the statute and the regulations require the Commission to make a finding on the record that no feasible and prudent alternative exists, this court finds that the Commission made that finding as to the project as a whole.
CT Page 1801 The defendants in their brief cited Couch v. ZoningCommission, 141 Conn. 349, 358, 359:
 It must be borne in mind, however, that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions . . . A poorly expressed minute should not ordinarily undo the work which otherwise bears the stamp of legality.
The court finds that the Commission acted properly in that their decision is supported by the record. The appeal is dismissed.
TOBIN, J.